Michael NEAL, Defendant
Below, Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

No. 282, 2013.

Supreme Court of Delaware.

Submitted: Sept. 18, 2013.
Decided: Nov. 8, 2013.

Joseph M. Bernstein, Wilmington, Delaware for appellant.

John Williams, Department of Justice, Dover, Delaware for appellee.

Before STEELE, Chief Justice, HOLLAND and JACOBS, Justices.

STEELE, Chief Justice:

In this appeal of a denial of a postconviction relief motion, we consider whether trial and appellate counsel were ineffective during their representation of the defendant, stemming from a series of robberies on New Year's Eve 2008. The defendant argues that his trial and appellate counsel were ineffective for failing to request at trial, and for failing to argue on direct appeal: (1) the inclusion of a *Bland* instruction in connection with certain accomplice testimony; and (2) the admission of certain out-of-court statements under Delaware Rule of Evidence 804(b)(3). We ultimately hold that the defendant's trial and appellate counsel were not ineffective in their representation. Accordingly, we

AFFIRM the judgment of the postconviction relief judge.

## I. FACTUAL AND PROCEDURAL HISTORY

### A. The New Year's Eve Robberies

On December 31, 2008, a group of armed men wearing gloves and disguises robbed three businesses in Wilmington. The first business was Cutrona Liquors. The co-owners, Ashok and Navin Patel, testified at trial that three men rushed into the store brandishing a gun. The men pointed the gun at Ashok and ordered him and his wife into a corner of the store. "While one member of the gang guarded the door, another emptied cash and receipts from a box, and the third removed vodka from a display."[1] The robbers fled the scene in a white car. Ashok followed the car and obtained the license plate number, which he later turned over to the police.

The robbers next visited Dun–Rite Dry Cleaners. Soo Kim, a co-owner, testified that three men casually entered the store while she attended to a customer. After the customer left, the three men rushed toward her with a gun. Kim fled to the back of the store and called the police. Her husband and another employee opened the cash register for the robbers.

The group then descended upon Creative Images Barber Shop. Larry Parks, the owner, testified at trial that three men entered the store brandishing guns and demanded money, wallets, and cell phones. The robbers held Parks at gunpoint and pistol whipped two customers with a gun.

Wilmington Police located and arrested four men in a white Chevrolet Lumina later that day. Inside the car, officers discovered the "spoils of their felonious escapade":[2] a handgun, masks, liquor bottles, cash, and other items plundered from the stores. Officers eventually identified the men in the car as Kevin Berry, Robert Brown, Michael Neal, and Kadeem Reams.

A grand jury indicted Neal on 36 counts related to the New Year's Eve robberies: nine counts each of First Degree Robbery, Possession of a Firearm During the Commission of a Felony, Wearing a Disguise During the Commission of a Felony, and Second Degree Conspiracy.

### B. Neal's Trial

Neal's trial began on August 11, 2009. Prior to trial, the State offered each of the four co-defendants a plea bargain in exchange for his testimony at any of the other co-defendants' trials. Berry, Brown, and Reams accepted their plea offers. Neal did not accept his plea offer and proceeded to trial.

At trial, the State presented 85 exhibits and the testimony of 24 witnesses. The State also planned to present the testimony of Neal's three co-defendants pursuant to the terms of their plea bargains. The State presented Brown's testimony, which implicated Neal as having played a role in the inception, planning, and execution of the robberies. On cross-examination, however, Brown admitted to initially telling the police that Neal had not participated in the robberies. Neal's trial counsel did not request a *Bland* instruction and the trial judge did not *sua sponte* give a *Bland* instruction regarding Brown's testimony.

The State declined to call Berry and Reams when it learned that the two co-defendants had made out-of-court statements tending to exculpate Neal. Berry made the exculpatory statement to his attorney, while Reams spoke directly to the Attorney General and detectives. The

---

1. *Neal v. State,* 3 A.3d 222, 223 (Del.2010). 2. *Id.*

State relayed this information to Neal's trial counsel.

Neal's trial counsel then attempted to call Berry and Reams to testify on the defendant's behalf. Each of them, however, invoked his Fifth Amendment right against self-incrimination and refused to testify. Berry and Reams feared that if they testified in Neal's defense, they would breach their plea bargains with the State. Without their testimony, Neal's trial counsel sought to admit Berry's and Reams's out-of-court statements under 11 *Del. C.* § 3507.[3] After brief argument on the issue, the trial judge concluded that the statements were not admissible under Section 3507. The trial judge reasoned that Berry and Reams would not be "subject to cross-examination" under the statute if they invoked their Fifth Amendment privileges.[4] Neal's lawyer asserted no other basis to admit the statements. Neal called no other witnesses and presented no evidence in his defense. A jury convicted Neal on all 36 counts and the trial judge sentenced him to 54 years incarceration.

### C. Neal's Motion for Judgment of Acquittal and Direct Appeal

At the conclusion of his case, Neal moved for a judgment of acquittal on twelve counts in the indictment. Neal argued that because he did not victimize Patel, Kim, or Harris,[5] as the statute required, his convictions regarding these alleged victims were improper. The trial judge denied Neal's motion and found sufficient evidence from which a rational jury could conclude that these individuals were victims of the robberies. Neal appealed to this Court the ruling regarding the eight counts related to Patel and Kim.[6]

On direct appeal, this Court affirmed the trial judge's denial of Neal's motion for judgment of acquittal. We concluded that "[b]ecause Patel and Kim had custodial and ownership interests in their respective businesses, Delaware law includes them as victims of Neal's robbery."[7] Moreover, we explained that these co-owners were victims even though they did not personally deliver money from their cash registers.

### D. Neal's Postconviction Relief Proceedings

Neal then moved for postconviction relief in the Superior Court under Rule 61. Broadly, Neal asserted two bases for relief: (1) ineffective assistance of counsel; and (2) prosecutorial misconduct. The postconviction relief judge denied Neal's motion in its entirety. First, although the postconviction relief judge found that Neal's trial counsel erred by failing to request an accomplice testimony instruction under *Bland v. State*,[8] he concluded that this error did not prejudice Neal's trial. At the time of the ruling, the failure to request a *Bland* instruction was not *per se* prejudicial. Accordingly, the postconviction relief judge reasoned that "[b]ecause the evidence against Neal was overwhelming," Neal suffered no prejudice.[9]

Second, the postconviction relief judge found no prosecutorial misconduct. Neal

3. That Section provides that "[i]n a criminal prosecution, the voluntary out-of-court prior statement of a witness who is present and subject to cross-examination may be used as affirmative evidence with substantive independent testimonial value."

4. Trial Tr. 6–7 (Aug. 14, 2009).

5. A bystander in Creative Images Barber Shop.

6. *Neal,* 3 A.3d at 223.

7. *Id.* at 224.

8. 263 A.2d 286 (Del.1970).

9. *State v. Neal,* 2013 WL 1871755, at *6 (Del.Super. May 1, 2013).

alleged that the prosecutor improperly deterred Berry and Reams from testifying for the defense by threatening to revoke their plea bargains if they did so. The postconviction relief judge reminded the defendant that "the State may warn a witness of the possible consequences of testifying falsely,"[10] although the prosecutor may not do so in a way that "substantially interferes with the witness's choice to testify."[11] The postconviction relief judge found that the prosecutor did not substantially interfere with Berry's and Reams's choice to testify, but merely reminded them of the consequences of giving false testimony.

Neal now appeals the Superior Court judge's denial of his motion for postconviction relief. He asserts that both his trial counsel and appellate counsel were ineffective.[12] Neal argues that his trial counsel was ineffective in failing both to argue that Berry's and Reams's statements were admissible under D.R.E. 804(b)(3) and to request a *Bland* instruction. Similarly, he argues that his appellate counsel was ineffective in failing to argue on direct appeal that the trial judge should have given a *Bland* instruction. In addition to the arguments made before the postconviction relief judge, Neal raises in this Court a new claim of ineffective assistance of counsel. Neal now argues that his appellate

counsel was also ineffective for failing to argue on direct appeal that his co-defendants' extrajudicial statements were admissible under D.R.E. 804(b)(3).

## II. STANDARD OF REVIEW

 We review a Superior Court judge's denial of a Rule 61 motion for postconviction relief for abuse of discretion.[13] "Nevertheless, we carefully review the record to determine whether 'competent evidence supports the court's findings of fact.'"[14] Questions of law are reviewed *de novo.*[15] Neal raises one claim that he did not raise before the Superior Court in his original motion for postconviction relief. That claim, which alleges that Neal's appellate counsel was ineffective for failing to argue the admissibility of certain out-of-court statements, "will not [be] review[ed] for the first time on appeal in the absence of plain error."[16]

## III. ANALYSIS

### A. The Strickland *Standard for Ineffective Assistance of Counsel*

 In order to prevail on a claim for ineffective assistance of counsel, a defendant must meet the two-pronged test established by the United States Supreme Court in *Strickland v. Washington.*[17] A defendant must first show that that his "counsel's representation fell below an objective standard of reasonableness."[18]

10. *Id.* at *12.

11. *Id.*

12. Neal does not appeal the Superior Court judge's denial of postconviction relief based upon prosecutorial misconduct. Accordingly, we will not address that argument.

13. *Ploof v. State,* 75 A.3d 811, 819 (Del.2013) (citing *Swan v. State,* 28 A.3d 362, 382 (Del. 2011)).

14. *Zebroski v. State,* 822 A.2d 1038, 1043 (Del. 2003), *impliedly overruled on other grounds as*

*recognized in Steckel v. State,* 882 A.2d 168, 171 (Del.2005).

15. *Id.* (citing *Swan,* 28 A.3d at 382); *see also Capano v. State,* 889 A.2d 968, 974 (Del.2006).

16. *Wood v. State,* 9 A.3d 477, 2010 WL 4735003, at *2 (Del. Nov. 22, 2010) (TABLE).

17. 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

18. *Id.* at 687, 104 S.Ct. 2052.

"Second, the defendant must show that the deficient performance prejudiced the defense." [19].

■ Because it is "all too easy for a court[ ] examining counsel's defense after it has proved unsuccessful" to succumb to the "distorting effects of hindsight," counsel's actions are afforded a strong presumption of reasonableness.[20] *Strickland* therefore requires the use of an objective standard of reasonableness based on "prevailing professional norms" when evaluating an attorney's conduct. Importantly, our task is to "reconstruct the circumstances of counsel's challenged conduct, and to *evaluate the conduct from the counsel's perspective at the time.*" [21]

■ Even if the defendant successfully demonstrates that his counsel's conduct fell below an objective standard of reasonableness, the inquiry does not end. We will not set aside the judgment in a criminal proceeding if the error had no effect on the outcome.[22] Counsel's error must have been "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." [23] In order to show prejudice, the defendant must establish "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." [24] A reasonable probability of a different result requires a "probability sufficient to undermine confidence in the outcome." [25] Although this standard is not mathematically precise and does not necessarily require a showing of "more likely than not," [26] *Strickland* requires more than a showing merely that the conduct "could have or might have or it is possible that [it would have]" led to a different result.[27] "The likelihood of a different result must be substantial, not just conceivable." [28]

### B. Neither Neal's Trial Counsel Nor Appellate Counsel Were Ineffective Under Strickland In Not Requesting A Bland Instruction At Trial Or In Failing To Argue the Issue On Direct Appeal.

#### i. The Evolution Of The Bland Instruction In Delaware

In *Bland*, this Court first recognized the "inherent weaknesses" [29] of accomplice testimony, which are "sufficiently problematical to merit a special jury instruction concerning the credibility of accomplice testimony." [30] Our *Bland* instruction encouraged the jury to consider an accomplice's testimony "with suspicion and great caution" because of potential credibility flaws.[31]

During the next four decades, we did not restrict trial judges to the exact language of the original *Bland* instruction or other-

19. *Id.*

20. *Id.* at 689, 104 S.Ct. 2052.

21. *Id.* (emphasis added).

22. *Id.* at 692, 104 S.Ct. 2052.

23. *Id.* at 687, 104 S.Ct. 2052.

24. *Id.* at 694, 104 S.Ct. 2052.

25. *Id.* at 693–94, 104 S.Ct. 2052.

26. *Harrington v. Richter,* —— U.S. ——, 131 S.Ct. 770, 792, 178 L.Ed.2d 624 (2011) (citing *Strickland,* 466 U.S. at 693, 697, 104 S.Ct. 2052).

27. *Ploof v. State,* 75 A.3d 840, 867 (Del.2013).

28. *Harrington,* 131 S.Ct. at 792 (citing *Strickland,* 466 U.S. at 693, 697, 104 S.Ct. 2052).

29. *Bland v. State,* 263 A.2d 286, 289 (Del. 1970).

30. *Smith v. State,* 991 A.2d 1169, 1178 (Del. 2010).

31. *Id.*

wise insist that specific instruction language be required. Instead, "this Court allowed trial judges considerable latitude in formulating the language of an accomplice testimony instruction."[32] In *Cabrera v. State*,[33] *Bordley v. State*,[34] and *Soliman v. State*,[35] the Court found "accomplice testimony instructions acceptable so long as they [were] accurate and adequately explain[ed] the potential problems with accomplice testimony."[36] These cases reaffirmed that defendants had a right to an accomplice testimony instruction upon request, but were not entitled to any specific formulation of its language.

The Court then decided *Smith v. State*,[37] a case of first impression involving trial counsel's failure to request a *Bland* instruction on an ineffective assistance of counsel claim. There, we reiterated that "a general credibility instruction is not an acceptable substitute for a specific accomplice credibility instruction."[38] Further, we explained that the best practice was to use the language originally suggested in *Bland* when giving an accomplice testimony instruction.[39]

We also determined that "the failure of [a defendant's] trial counsel to request a specific instruction on the credibility of accomplice testimony amounted to 'deficient attorney performance' under the first part of our *Strickland* analysis."[40] However, *Smith* still required the defendant to establish prejudice under the second prong of *Strickland* by "show[ing] that, but for counsel's unprofessional errors, there [was] a reasonable probability that the outcome of the case would have been different." We held that "trial counsel's failure to request such an instruction will not always be prejudicial *per se*,"[41] and that an analysis under the specific facts and circumstances of each case would be required.[42]

One year later, the Court added further complexity to this area of the law in *Hoskins v. State*.[43] In *Hoskins,* the defendant argued on direct appeal that the trial judge's failure to give a *Bland* instruction, even where his trial counsel did not request one, amounted to plain error. Although we reaffirmed the longstanding rule that a trial judge is required to give an accomplice testimony instruction *upon request,* we did not read *Smith* to go so far as to create a new rule requiring trial judges to give the instruction *sua sponte.*

■■■ We reserved to a later case the pronouncement of such a broad rule, and ultimately addressed the issue in *Brooks v. State*,[44] where we sought to clarify and "resolve this unnecessarily convoluted area of the law."[45] In that case, we unequivocally told trial judges going forward to "give the modified *Bland* instruction or commit plain error."[46] Although we did

---

32. *Id.*

33. 747 A.2d 543 (Del.2000).

34. 832 A.2d 1250 (Del.2003) (TABLE).

35. 918 A.2d 339 (Del.2007) (TABLE).

36. *Brooks v. State,* 40 A.3d 346, 349 (Del. 2012).

37. 991 A.2d 1169 (Del.2010).

38. *Id.* at 1179.

39. *Id.*

40. *Id.* at 1177.

41. *Id.* at 1180.

42. *Id.*

43. 14 A.3d 554 (Del.2011).

44. 40 A.3d 346 (Del.2012).

45. *Id.* at 350.

46. *Id.*

not apply that new rule to Brooks and affirmed his convictions, we did hold, and *Brooks* now requires, that trial judges give the following modified *Bland* instruction, even if the defense does not request it, whenever an accomplice witness testifies:

> A portion of the evidence presented by the State is the testimony of admitted participants in the crime with which these defendants are charged. For obvious reasons, the testimony of an alleged accomplice should be examined by you with more care and caution than the testimony of a witness who did not participate in the crime charged. This rule becomes particularly important when there is nothing in the evidence, direct or circumstantial, to corroborate the alleged accomplices' accusation that these defendants participated in the crime. Without such corroboration, you should not find the defendants guilty unless, after careful examination of the alleged accomplices' testimony, you are satisfied beyond a reasonable doubt that it is true and you may safely rely upon it. Of course, if you are so satisfied, you would be justified in relying upon it, despite the lack of corroboration, and in finding the defendants guilty.[47]

In doing so, we overruled the earlier line of cases allowing for variability in the *Bland* instruction's language, and deemed a failure to give this instruction as plain error.

We now apply the relevant legal precepts to the facts of this case.

### ii. Trial Counsel

#### a. Did Trial Counsel's Conduct Fall Below An Objective Standard Of Reasonableness?

■■■■ " '[T]he state of the law is central to an evaluation of counsel's performance.... A reasonably competent attorney patently is required to know the state of the law.' "[48] In his affidavit, Neal's trial counsel suggests that no accomplice credibility instruction was necessary because the jury also received the general witness credibility instruction. But ever since this Court's pronouncement in *Bland,* where we expressly recognized that "[accomplice testimony] has inherent weakness, being testimony of a confessed criminal and fraught with dangers of motives,"[49] it has been clear that "a general credibility instruction is not an acceptable substitute for a specific accomplice credibility instruction."[50] And even though this Court, at the time of Neal's trial, displayed some ambivalence about the exact wording of a *Bland* instruction, "it was well established that, in Delaware, a defendant is entitled, upon request, to a specific jury instruction concerning the credibility of accomplice testimony in cases where the State's evidence includes the testimony of an accomplice."[51]

■■■■ At the time of Neal's trial, his counsel did not have the benefit of this Court's recent decisions in *Smith* and *Brooks.* Though we do not require lawyers to predict the future, these cases only underscore the concerns that this Court has long recognized: a decision not to request a *Bland* instruction is not a product of trial strategy. "[T]here is no reasonable trial strategy for failing to request the cautionary accomplice testimony instruction.... We cannot envision an advantage which could be gained by withholding a request for th[ese] instruction[s]."[52] "When considering whether to

---

**47.** *Id.; see also id.* at 348.

**48.** *Smith v. State,* 991 A.2d 1169, 1174 (Del. 2010) (quoting *Everett v. Beard,* 290 F.3d 500, 509 (3d Cir.2002)).

**49.** *Bland v. State,* 263 A.2d 286, 289 (Del. 1970).

**50.** *Smith,* 991 A.2d at 1179.

**51.** *Id.* at 1175.

**52.** *Id.* at 1177 (quoting *Freeman v. Class,* 95 F.3d 639, 642 (8th Cir.1996)).

request an instruction on accomplice testimony, the defense gains nothing by failing to request a cautionary instruction, aside perhaps from a later chance at a claim for ineffective assistance of counsel."[53] Even a mere oversight will amount to deficient performance. As we recently stated in *Brooks,* "[c]ounsel who forgets to request an instruction that could help his client fails to meet an objective standard of reasonableness."[54]

Here, the defense characterized the State's case as "[l]acking any direct evidence of Neal's involvement in the robberies," which caused "Brown [to become] the centerpiece of the State's case."[55] Because the defense adopted the view that Brown's testimony was critical to link Neal to the alleged crimes, undoubtedly Neal's lawyer should have focused his energy on discrediting Brown's testimony. Indeed, trial counsel's only strategy, it appears, was to discredit Brown. That conclusion is bolstered by the fact that Neal presented no witnesses or other evidence in his defense. Under these circumstances, any reasonable trial counsel in that position would certainly have requested a *Bland* instruction to further undermine Brown's credibility as a witness.

 Neal's trial counsel's failure to request a *Bland* instruction on the credibility of accomplice testimony fell below an objective standard of reasonable attorney conduct. Thus, Neal meets *Strickland's* first requirement.

### b. Did Trial Counsel's Failure To Request A Bland Instruction Prejudice Neal?

 The defendant must also prove that his counsel's failure to request a *Bland* instruction caused him prejudice because the "failure to request such an instruction will not always be prejudicial *per se.*"[56] "The prejudicial effect depends upon the facts and circumstances of each particular case."[57] "If independent evidence supports accomplice testimony, then we will not find a defendant prejudiced by counsel's failure to ask for the *Bland* instruction."[58]

The postconviction relief judge, in his *Strickland* analysis highlighted the large quantity of evidence presented by the State at trial:

At Neal's trial, the State presented 85 exhibits and 24 witnesses, including one co-defendant. The State presented money and valuables that the robbers stole and a disguise that a robber wore, all of which the police found near where Neal sat in the Lumina. The State also displayed a revolver, which the police found near the Lumina's passenger-side, front door. Officers testified that Neal had a revolver, which fell onto the street when he tried to discard the gun. Further, victims Keenan Scarborough and Jonathan Mitchell testified that one robber carried a revolver. Scarborough described the revolver as "dark" and "black." Finally, Brown testified that Neal participated in the robberies and a carried a black .357 revolver with a brown handle while the codefendants were robbing the businesses.

53. *Brooks v. State,* 40 A.3d 346, 354 (Del. 2012).

54. *Id.*

55. Opening Br. at 26.

56. *Smith,* 991 A.2d at 1180 (emphasis in original).

57. *Id.*

58. *Brooks,* 40 A.3d at 354.

In contrast, Neal did not testify, presented no evidence, and tried to call only two witnesses: Berry and Reams. They refused to testify, and each invoked his Fifth Amendment right not to testify against himself.[59]

The postconviction relief judge concluded that "[e]ven without Brown's testimony, the evidence against Neal was overwhelming, and it showed that Neal helped Berry, Reams, and Brown rob the businesses." We agree. Given the overwhelming record evidence that supports the accomplice's testimony, Neal cannot show a reasonable probability that the jury would have come to a different result had it received a *Bland* instruction. Accordingly, although his trial counsel's conduct fell below an objective standard of reasonableness, Neal's claim for ineffective assistance of counsel fails because the deficiency did not prejudice him at trial.

### iii. Appellate Counsel

### a. Did Appellate Counsel's Conduct Fall Below An Objective Standard Of Reasonableness?

■ When evaluating an appellate counsel's conduct for ineffective assistance, we apply the same *Strickland* framework.[60] "[The Defendant] must first show that his counsel was objectively unreasonable in failing to find arguable issues to appeal—that is, that counsel unreasonably failed to discover nonfrivolous issues and to file a merits brief raising them."[61] The United States Supreme Court has recognized that appellate counsel "need not (and should not) raise every nonfrivolous claim,

but rather may select from among them in order to maximize the likelihood of success on appeal."[62] Nevertheless, "[i]t is still possible to bring a *Strickland* claim based on counsel's failure to raise a particular claim, but it is difficult to demonstrate that counsel was incompetent."[63]

■ To be sure, it is much easier for a defendant to satisfy the first prong of *Strickland* where he claims that his appellate counsel completely failed to file a merits brief. The reason is that "it is only necessary for him to show that a reasonably competent attorney would have found one nonfrivolous issue warranting a merits brief."[64] On the other hand, where the allegedly ineffective appellate counsel did file a merits brief in the first instance, the defendant faces a tougher burden of "showing that a particular nonfrivolous issue was clearly stronger than issues that counsel did present."[65] Thus, Neal must demonstrate that an argument on direct appeal regarding the *Bland* instruction that was not presented, was "clearly stronger" than the arguments that were actually presented on direct appeal.

■ Neal's counsel raised only one argument on direct appeal: that two of the people did not qualify as victims in the robberies. Like his trial counsel, Neal's appellate counsel did not have our decision in *Brooks* at his disposal. Unlike his trial counsel, however, Neal's appellate counsel is chargeable with knowledge of this Court's decision in *Smith*, which we decided on March 30, 2010, during the pendency of the direct appeal. In *Smith*, we grant-

---

59. *State v. Neal*, 2013 WL 1871755, at *1 (Del.Super. May 1, 2013). For further detail of the evidence presented against Neal, consult the Superior Court's decision in *Neal*, 2013 WL 1871755, at *6.

60. *See Smith v. Robbins*, 528 U.S. 259, 285, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000).

61. *Id.*

62. *Id.* at 288, 120 S.Ct. 746.

63. *Id.*

64. *Id.*

65. *Id.*

ed a defendant's motion for postconviction relief based upon ineffective assistance of counsel where his trial counsel failed to request a *Bland* instruction. Although *Smith* was a fact-specific judgment in the postconviction relief context, our analysis was relevant to the issues on Neal's direct appeal. The standard for prejudice on an ineffective assistance of counsel claim is not identical to that required under a plain error standard of review. Even so, the underlying facts and the prejudice analysis in *Smith* were sufficiently applicable that Neal's appellate counsel should have been alerted to the issue. The fact that we found Smith's trial counsel to be ineffective for failing to request a *Bland* instruction—which included a *Strickland* prejudice assessment—should have signaled to Neal's appellate counsel the strength of the argument.

Moreover, the most Neal's appellate counsel could have hoped for as a result of the argument actually presented was acquittal on less than one-fourth of the total counts (8 out of 36).[66] On the other hand, a successful argument based on the lack of a *Bland* instruction would have resulted in a new trial—a far better result. Based on the availability of the *Smith* opinion during the pendency of Neal's appeal, and its potential import to Neal's direct appeal, we find that Neal has met the heavy burden of showing that the omitted argument on direct appeal was clearly stronger than the one actually raised. For that reason, Neal's appellate lawyer fell below an objectively reasonable standard of conduct in failing to raise the *Bland* instruction argument in light of our decision in *Smith* and its potential impact.

**b. Did Appellate Counsel's Failure To Raise The Bland Instruction Argument On Appeal Prejudice Neal?**

■ Apart from our analysis of the objective reasonableness of appellate counsel's conduct, the defendant must still demonstrate that counsel's performance caused prejudice. "That is, [the defendant] must show a reasonable probability that, but for his counsel's unreasonable failure to file a merits brief, he would have prevailed on his appeal." [67]

■ Had appellate counsel raised the *Bland* instruction issue on direct appeal, we would have reviewed the argument for plain error, since trial counsel failed to address the issue below and the trial judge did not raise it *sua sponte*. "Under [the] plain error standard of review, the error complained of must be so clearly prejudicial to substantial rights as to jeopardize the fairness and integrity of the trial process." [68] Thus, the defendant must show a reasonable probability that his appellate counsel would have prevailed on direct appeal under a plain error standard of review.

Like his trial counsel, Neal's appellate counsel did not have the benefit of this Court's new rule announced in *Brooks*, which requires trial judges to issue a modified *Bland* instruction, even when not requested to do so, or else be deemed to commit plain error. *Brooks*, which we decided on February 23, 2012, did not exist at the time of Neal's direct appeal. Had the new *Brooks* rule been in effect at that time, we would undoubtedly find that appellate counsel's conduct prejudiced Neal. That finding would be consistent with *Brooks*, where we held that a trial judge's failure to issue a modified *Bland* instruc-

---

66. *Neal v. State*, 3 A.3d 222, 223 (Del.2010).

67. *Robbins*, 528 U.S. at 285, 120 S.Ct. 746.

68. *Hoskins v. State*, 14 A.3d 554, 561 (Del. 2011) (citing *Turner v. State*, 5 A.3d 612, 615 (Del.2010)).

tion would constitute plain error. But those are not the facts here.

 Instead, Neal must demonstrate that his appellate counsel would have prevailed under a plain error standard of review, without the benefit of *Brooks,* to meet the prejudice standard required by *Strickland.* For the reasons described above, namely, the overwhelming evidence supporting the accomplice testimony, Neal's appellate counsel would not have prevailed under a plain error standard. Our earlier determination that Neal was not prejudiced by his trial counsel's deficiency under *Strickland* necessitates the same conclusion—that he was not prejudiced by his appellate counsel under the more exacting plain error standard. Because Neal has failed to show that his appellate counsel would have prevailed under the plain error standard of review that would have applied to his argument on direct appeal, Neal cannot meet *Strickland*'s prejudice requirement. Neal's appellate counsel, therefore, was not ineffective by having failed to argue the *Bland* instruction issue on direct appeal.

### C. Neither Neal's Trial Counsel Nor Appellate Counsel Were Ineffective Under Strickland For Failing To Admit The Co–Defendants' Out–Of–Court Statements.

### i. D.R.E. 804(b)(3) And Non–Self– Inculpatory Statements

"Hearsay statements are generally inadmissible." [69] Exceptions to that general rule apply only where a hearsay declaration "has some theoretical basis making it inherently trustworthy." [70] For example, Delaware Rule of Evidence 804(b)(3) provides a hearsay exception that "is founded on the commonsense notion that reasonable people ... tend not to make self-inculpatory statements unless they believe them to be true." [71] That Rule allows courts to admit certain hearsay statements that are against the declarant's interests at the time they were made:

> A statement which was, at the time of its making, so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless the declarant believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement. [72]

 D.R.E 804(b)(3) sets forth three prerequisites for admissibility: first, the declarant must be unavailable; second, the statement must run contrary to the declarant's interest; and third, there must be corroborating circumstances that indicate the statement is trustworthy. [73] In *Demby v. State,* [74] the Court highlighted four factors that a trial judge should consider when determining the third prerequisite— whether "corroborating circumstances clearly indicate the trustworthiness of the statement":

> 804(b)(3), the federal counterpart to D.R.E. 804(b)(3)).

**69.** *Smith v. State,* 647 A.2d 1083, 1088 (Del. 1994).

**70.** *Id.*

**71.** *Williamson v. United States,* 512 U.S. 594, 594, 114 S.Ct. 2431, 129 L.Ed.2d 476 (1994) (discussing Federal Rule of Evidence

**72.** D.R.E. 804(b)(3).

**73.** *Demby v. State,* 695 A.2d 1152, 1157–58 (Del.1997).

**74.** 695 A.2d 1152 (Del.1997).

(1) whether the statement was made spontaneously and in close temporal proximity to the commission of the crime;

(2) the extent to which the statement was truly self-incriminatory and against penal interest;

(3) consideration of the reliability of the witness who was reporting the hearsay statement; and

(4) the extent to which the statement was corroborated by other evidence in the case.[75]

In applying D.R.E. 804(b)(3) this Court has been careful to dissect statements into their self-inculpatory and non-self-inculpatory components. That is, we recognize that "[t]here is no clear policy basis ... for attributing equal guarantees of trustworthiness to declarations appurtenant to the self-incriminatory ones."[76] As the United States Supreme Court noted in *Williamson*, "[o]ne of the most effective ways to lie is to mix falsehood with truth, especially truth that seems particularly persuasive because of its self-inculpatory nature."[77] Thus, in *Smith v. State*,[78] this Court held that "[n]on-self-incriminatory components of a declaration purportedly falling within D.R.E. 804(b)(3) are *presumptively inadmissible* hearsay because they cannot claim any special guarantees of reliability and trustworthiness."[79] A court must keep this distinction in mind when analyzing the ineffectiveness of a defendant's (here, Neal's) trial and appellate counsel's representation.

### ii. Neal's Trial Counsel Was Objectively Reasonable In Not Seeking Admission Of The Out–Of–Court Statements Under D.R.E. 804(b)(3) At Trial.

After Berry, Reams, and Brown accepted their plea bargains from the State, each "professed that Neal helped them rob the businesses."[80] During Neal's trial, Berry and Reams changed their stories. While maintaining their own involvement, Berry and Reams claimed that Neal did not participate in the robberies.

In light of their new, contrary statements, Neal attempted to call Berry and Reams to testify in order to contradict the State's story. Both Berry and Reams, however, invoked their Fifth Amendment right not to testify. "And when Berry and Reams chose silence, they left Neal only with hearsay evidence—that is, their out-of-court statement—to attempt to cast doubt onto the State's narrative."[81] The trial judge denied Neal's trial counsel's request to admit the out-of-court statements under 11 *Del. C.* § 3507. Neal's trial counsel admitted that "3507 [was] the only crutch [Neal had] here" to admit the out-of-court statements. Trial counsel reiterated that position in his postconviction relief affidavit where he stated that he believed "D.R.E. 804 was not applicable since the statements of Reams and Berry ... were not "trustworthy" as required by statute."[82]

 Looking through *Strickland* lenses, we find that Neal cannot show that his

**75.** *Id.* at 1158 (citing *Outten v. State*, 650 A.2d 1291, 1296–97 (Del.1994)).

**76.** *Smith v. State*, 647 A.2d at 1087, 1088 (Del.1994).

**77.** *Williamson v. United States*, 512 U.S. 594, 599–600, 114 S.Ct. 2431, 129 L.Ed.2d 476 (1994).

**78.** 647 A.2d 1083 (Del.1994).

**79.** *Id.* at 1088 (emphasis added).

**80.** *State v. Neal*, 2013 WL 1871755, at *3 (Del.Super. May 1, 2013).

**81.** *Id.*

**82.** App. to Op. Br. at A44.

trial counsel's representation fell below an objective standard of reasonableness by deciding not to argue D.R.E. 804(b)(3) as a basis to admit Berry's and Reams's out-of-court statements (collectively, the "Statements").[83] We therefore affirm the judgment of the postconviction relief judge, but we do so using a different rationale.[84]

Strickland's objective standard of reasonableness prong is based on prevailing professional norms. Under Strickland, Neal's trial counsel's decision not to pursue admission under 804(b)(3) is afforded a strong presumption of reasonableness. Under Smith, we first must bifurcate the Statements into their self-inculpatory and non-self-inculpatory components: (1) each declarant reiterated his own involvement in the robberies (self-inculpatory); and (2) each declarant stated that Neal was not involved in the robberies (non-self-inculpatory).

Introducing the self-inculpatory components of the Statements was of little value to Neal's trial counsel, because substantial evidence already supported the conclusion that Berry and Reams had participated in the robberies. Thus, the main advantage to Neal would be for the non-self-inculpatory components of the Statements that tended to exculpate Neal to be admitted. Neal's trial counsel's conclusion that the Statements were not "trustworthy," as the Rule requires, is consistent with our view in Smith that "[n]on-self-incriminatory components of a declaration purportedly falling within D.R.E. 804(b)(3) are presumptively inadmissible hearsay because they cannot claim any special guarantees

of reliability and trustworthiness."[85] We therefore conclude that it was objectively reasonable for Neal's trial counsel not to argue D.R.E. 804(b)(3) as a basis for the admission of the Statements. Because Neal failed to establish the first prong of Strickland, it is unnecessary for us to address the issue of prejudice.

### iii. Neal Cannot Establish Plain Error Regarding His Appellate Counsel's Decision Not To Argue The Admissibility Of The Out-Of-Court Statements Under D.R.E. 804(b)(3) on Direct Appeal.

Neal similarly alleges that his appellate counsel was ineffective by failing to argue the admissibility of the Statements under D.R.E. 804(b)(3) on direct appeal. Because Neal did not raise that claim in the Superior Court in his original motion for postconviction relief, it "will not [be] review[ed] for the first time on appeal in the absence of plain error."[86] "Under plain error standard of review, the error complained of must be clearly prejudicial to substantial rights as to jeopardize the fairness and integrity of the trial process."[87]

We find no plain error. Smith requires that the Court parse the self-inculpatory from the non-self-inculpatory components of the Statements when determining their admissibility under D.R.E. 804(b)(3). The self-inculpatory portions of the Statements related only to Berry's and Reams's own participation in the robberies. Even if those portions of the Statements had been admitted into evidence, they would have

---

83. We need not address whether Berry's out-of-court statement is protected by the attorney-client privilege because, even if it were admitted, we find that it would not have affected the outcome of Neal's trial.

84. See, e.g., Unitrin, Inc. v. Am. Gen. Corp., 651 A.2d 1361 (Del.1995).

85. Smith v. State, 647 A.2d 1083, 1088 (Del. 1994).

86. Wood v. State, 9 A.3d 477, 2010 WL 4735003, at *2 (Del. Nov. 22, 2010) (TABLE).

87. Hoskins. v. State, 14 A.3d 554, 561 (Del. 2011) (citing Turner v. State, 5 A.3d 612, 615 (Del.2010)).

added little to the evidentiary mix and would not have tended to exculpate Neal. The admission by any one participant in a crime that involves multiple parties does not automatically negate another participant's involvement. Thus, the admission of those portions, when considered in light of the substantial independent evidence presented at trial, would not have altered Neal's trial.

Nor would the non-self-inculpatory portions of the Statements—that Neal allegedly did not participate in the robberies—have been admitted under D.R.E. 804(b)(3). Those neutral components were merely collateral to the truly self-inculpatory components of the Statements.[88] Thus, under *Smith*, the Court would have found those collateral portions to be "presumptively inadmissible hearsay" for purposes of D.R.E. 804(b)(3).[89] In sum, the self-inculpatory portions of the Statements added little to the evidentiary mix, and the non-self-inculpatory portions that actually tended to exculpate Neal would not have been admitted under D.R.E. 804(b)(3). Neal therefore cannot demonstrate that his appellate counsel's failure to argue for the admission of the Statements under D.R.E. 804(b)(3) constituted ineffective assistance under the plain error standard.

### iv. *Neal's Reliance On* Demby *Is Misguided.*

Neal also argues that his trial counsel should have offered the Statements into evidence under D.R.E. 804(b)(3) by referring the Court to its judgment in *Demby*, and that his appellate counsel should have raised the issue on direct appeal. In *Demby*, the defense counsel attempted to offer an out-of-court statement of a third party who had admitted to committing the crime for which Demby was on trial.[90] In *Demby*, we noted that under D.R.E. 804(b)(3) a "statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement."[91] On appeal, we examined the four factors that trial judges must consider when analyzing the trustworthiness of a declarant's statement and concluded that the trial judge had improperly excluded that statement.[92]

In arriving at that conclusion, we stated that "[t]he corroboration requirement should not be used as a means of usurping the jury's function."[93] Instead, "[t]he trial judge must find only that sufficient corroborating circumstances exist and then permit the jury to make the ultimate determination of the weight to be given to such evidence."[94] Thus, "[i]f there is some corroboration to support the self-inculpatory statement that another person committed the crime for which the defendant is on trial, that evidence should be presented to the trier of fact."[95]

Neal's reliance on *Demby* is misguided. The facts here are easily distinguished. *Demby* involved a lone defendant on trial for murder. When a third party stated that he committed the murder, that created an "either/or" scenario: either Demby committed the murder or the third party did. The third-party's self-inculpatory

---

88. *Smith*, 647 A.2d at 1086 ("D.R.E. 804(b)(3) only allows admission of truly self-inculpatory statements.").

89. *Id.* at 1088.

90. *Demby v. State*, 695 A.2d 1152, 1155 (Del. 1997).

91. *Id.* at 1157.

92. *Id.* at 1158.

93. *Id.* at 1159.

94. *Id.*

95. *Id.* at 1160.

statement alone had the effect of automatically exculpating Demby. Here, the robberies involved several persons. Where there are multiple participants in a crime, an admission by one participant does not automatically negate another's involvement or culpability. The Statements at issue here only maintain an exculpatory effect because of the language that is collateral to the actual self-inculpatory portions.

Second, in *Demby*, the Court analyzed a truly self-inculpatory statement that did not contain any collateral, non-self-inculpatory components. In this case, the Statements include self-inculpatory as well as non-self-inculpatory components. The self-inculpatory components, reiterating Berry's and Reams's involvement in the robberies, would have invoked *Demby*'s application of D.R.E. 804(b)(3). But we do not need to analyze *Demby*'s effect on the admission into evidence of those portions. Even if the self-inculpatory components of the Statements were admitted, they would have had little impact, because substantial independent evidence to that effect already existed. Furthermore, *Demby* would not have applied to the non-self-inculpatory portions of the Statements. Rather, those portions are presumptively inadmissible under *Smith*.

## IV. CONCLUSION

Accordingly, we AFFIRM the judgment of the Superior Court. Jurisdiction is not retained.