# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| STATE OF DELAWARE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | Cr. ID. No. 1305019629 |
| | ) | |
| | ) | |
| | ) | |
| DARIUS O. HARDEN, | ) | |
| | ) | |
| Defendant. | ) | |

Dated: February 21, 2017

## COMMISSIONER'S REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION FOR POSTCONVICTION RELIEF

Andrea L. Johnson, Esquire, Deputy Attorney General, Delaware Department of Justice, 820 N. French St. 7th Floor, Criminal Division, Wilmington, Delaware, 19801, Attorney for the State.

Christopher S. Koyste, Esquire, 709 Brandywine Blvd., Wilmington, DE 19809, Attorney for the Defendant.

**MANNING, Commissioner**

This 21st day of January, 2017, upon consideration of defendant Darius Harden's amended motion for postconviction relief (hereinafter "Motion"), I find and recommend the following:

## Facts and Procedural Background

On July 8, 2013, Harden was indicted by a Grand Jury for the crimes of Home Invasion, Assault in the Second Degree, Terroristic Threatening, Theft, Offensive Touching and Endangering the Welfare of a Child. On March 10, 2014, Harden pleaded guilty to one count of Assault in the Second Degree.[1] A pre-sentence investigation was order and sentencing occurred on May 30, 2014. As contemplated by the express terms of the guilty plea agreement signed by Harden, the State filed a motion to declare him a Habitual Offender pursuant to 11 *Del. C.* §4214(a). Harden's plea agreement was a global one in that it encompassed two separate cases and a pending violation of probation. As part of the plea agreement, the State agreed to cap its Level V recommendation at 15 years. At sentencing, Harden was declared a Habitual Offender and sentenced to 18 years at Level V with no probation to follow.

Harden did not appeal his conviction to the Delaware Supreme Court. However, Harden did file a motion for reduction of sentence pursuant to Superior

---

[1] Harden's case originally proceeded to a jury trial, however, a mistrial was declared on February 18, 2014.

1

Court Crim. Rule 35(a). This motion was denied by the sentencing judge on December 1, 2014.[2] Harden then timely filed his first *pro se* motion for postconviction relief in this case on May 5, 2015.

Pursuant to Superior Ct. Crim. Rule 62, Harden's Motion was referred to the undersigned Commissioner on June 15, 2015. Based upon my initial review of Harden's Motion I did not see the need for an evidentiary hearing. Following a review of Harden's *pro se* motion I ordered a transcript of the May 30, 2014 sentencing hearing.[3] It should be noted that Harden was represented by two different lawyers, both of whom filed an affidavit in response to Harden's *pro se* claims. Harden was represented by the Honorable Ferris F. Wharton up to and including the entry of his guilty plea. Upon Judge Wharton's appointment to the Superior Court, Harden's case was transferred to Assistant Public Defender Joseph M. Leager, Jr., who represented him at sentencing.

On June 3, 2015, the day before the most recent version of Rule 61 took effect, Harden filed a motion for appointment of counsel. On July 13, 2015, the Honorable Vivian L. Medinilla, who was also the sentencing judge, granted Harden's motion for appointment of counsel.[4] Due to a shortage of available

---

[2] D.I. #40.

[3] Due to an administrative oversight, I was not made aware that the necessary transcript had been completed until December 30, 2015.

[4] D.I. #46.

lawyers, the Office of Conflicts Counsel was not able to appoint counsel to represent Harden for his postconviction motion until March 24, 2016.[5] On April 26, 2016, I issued a new scheduling order that required Mr. Leager and the State to file responses to the amended Motion. On July 18, 2016, with the assistance of counsel, Harden filed an amended Motion for postconviction relief and raised the following two claims:

> Ground one: Sentencing counsel was ineffective for failing to meet with Mr. Harden prior to the sentencing hearing to develop a sentencing strategy and to prepare Mr. Harden on providing a mitigating allocution, resulting in prejudice to Mr. Harden [].

> Ground two: If sentencing counsel's statements at the sentencing hearing were not made with a strategic purpose, then sentencing counsel was ineffective, resulting in prejudice to Mr. Harden [].

On August 17, 2017, Mr. Leager filed a supplemental affidavit in response to Harden's amended Motion. On October 14, 2016, the State filed its Memorandum In Opposition to Harden's Motion. On November 16, 2016, Harden filed his Reply to the State's Response.[6]

## Legal Standard

To prevail on an ineffective assistance of counsel claim, a defendant must meet the two-pronged *Strickland* test by showing that: (1) counsel performed at a

---

[5] D.I. #60.

[6] D.I. #72.

3

level "below an objective standard of reasonableness" and that, (2) the deficient performance prejudiced the defense.[7] The first prong requires the defendant to show by a preponderance of the evidence that defense counsel was not reasonably competent, while the second prong requires the defendant to show that there is a reasonable probability that, but for defense counsel's unprofessional errors, the outcome of the proceedings would have been different.[8]

When a court examines a claim of ineffective assistance of counsel, it may address either prong first; where one prong is not met, the claim may be rejected without contemplating the other prong.[9] Mere allegations of ineffectiveness will not suffice; instead, a defendant must make and substantiate concrete allegations of actual prejudice.[10] An error by defense counsel, even if professionally unreasonable, does not warrant setting aside the judgment of conviction if the error had no effect on the judgment.[11]

In considering post-trial attacks on counsel, *Strickland* cautions that trial counsel's performance should be reviewed from his or her perspective at the time

---

[7] *Strickland v. Washington*, 466 U.S. 668, 687-88, 694 (1984).

[8] *Id.*

[9] *Id.* at 697.

[10] *Younger v. State*, 580 A.2d 552, 556 (Del. 1990).

[11] *Strickland*, 466 U.S.at 691.

decisions were being made.[12] A fair assessment of attorney performance requires that every effort be made to eliminate the distorting efforts of hindsight. Second guessing or "Monday morning quarterbacking" should be avoided.[13]

## Analysis

The procedural requirements of Rule 61 must be addressed before considering the merits of any argument.[14] Harden's Motion was timely filed, is not repetitive, and neither issue was raised previously. Therefore, Harden's Motion is not procedurally barred under Rule 61.

Harden's claims are somewhat unique in that he is not challenging his conviction or guilty plea, as is the norm. Rather, Harden's arguments can be combined and summarized as follows: *had my lawyer done a better job at sentencing, I would have received a shorter sentence.* Thus, the question before the Court is: was there something Harden's lawyer could have done or said, either during sentencing or in preparation for, that would have *probably* resulted in a shorter jail sentence for Harden?

In his Supplemental Affidavit, Defense Counsel states that he was assigned Harden's case 2-3 days prior to sentencing and that he met with Harden prior to sentencing in "lock-up" for approximately 15-20 minutes to discuss the case.

---

[12] *Id.*

[13] *Id.*

[14] *See Younger*, 580 A.2d at 554.

5

Defense Counsel also stated that it was his "intent to adopt prior counsel's position and argue for the sentencing cap based on all relevant sentencing information in the PSI... ." Harden disputes this and claims that Defense Counsel only met him for the first time when he entered the courtroom for sentencing.[15] Due to this discrepancy, Harden has requested an evidentiary hearing. The record before me is that Defense Counsel has filed a sworn affidavit with the Court stating that he met with Harden in "lock-up" prior to sentencing to discuss the case. Although Harden now disputes this, I have no reason to believe that a hearing would shed any additional light on the question, nor cause me to doubt Defense Counsel's sworn affidavit.

A review of the sentencing transcript reveals Defense Counsel's comments to the Court on Harden's behalf consisted of the following:

> Good morning, Your Honor. As tempted as one might be, there is no real positive spin [that] can be put on domestic violence cases. While there is always a back and forth component, and a component of lack of maturity, discipline on usually both people's part, this case is clear that at the end of the day Mr. Harden was the one [who] has made most immature, undisciplined choice in this conduct that occurred. Irrespective of whether it started as a verbal argument, whether the complaining witness physically assaulted him, no matter how you look at it, the scope of his response exceeded any defensible self-defense, what have you.
>
> That is the problem with Mr. Harden had in this case. Thankfully, with clearly a history of bad decision making,

---

[15] D.I. #65 at A72.

wrong choices, perhaps finally make a correct choice in pleading, resolving the case a somewhat tortured history, from what I understand, with trial and immunity issues. These things expend a lot of resources, but by the same token they are not uncommon in domestic violence cases. So Mr. Harden pled. There is really no defensible explanation for the response no matter what was going on that day, no matter what prompted this. I think Mr. Harden understands that you simply cannot hit someone hard enough to knock their teeth out and cause injury. That is what happened in this case.

As a result of his past, in combination with the charge itself, he is a habitual offender. So it is no longer a discretionary argument in sentencing range of zero to eight, he is eight years minimum right out of the gate, which is a significant punishment. The State has indicated they will stand by their ceiling of 15 years, which was negotiated part of the case resolution. From my part, I can only bring a few points to the Court's attention, perhaps something slightly less than that would be appropriate, because at the end of the day, even Mr. Harden understands he has to get a significant punishment off of what happened here.

\* \* \*

I think it is a one of few positive that he cooperated with the State, as he should. It is a good choice. Good choices don't outweigh bad choices but it is a start. Mental health treatment seems required on what I see in front of me. I think the Court should order that in some fashion. Really, all I can do is suggest the Court that 12 years, give or take, as opposed to 15 is a good starting point.[16]

Defense Counsel made additional comments during sentencing regarding Harden's cooperation agreement with the State on unrelated matters and his status

---

[16] Sent. T. at 8-12.

as an Habitual Offender. However, the above quote represents the substance of the comments made on Harden's behalf.

The law requires that there is a "reasonable probability" that the outcome of the case would have been different but for defense counsel's deficient performance. In this case, would the sentencing judge have imposed less jail time had defense counsel done a better job of preparing Harden for his allocution and in the presentation of mitigating evidence? In my view, the answer is most likely no. However, I must conclude that although there is a *possibility* Harden might have received less jail time, there is not a reasonable *probability* of it.

To a certain extent, Harden's motion is conclusory in that it fails to present any new mitigating evidence that would have *probably* swayed the sentencing judge to impose a shorter sentence. The use of the word "probably" is important, because under *Strickland*, the "probability" of a different outcome does not mean a mere "possibility"—it is a higher standard. In *Neal v. State*, the Delaware Supreme Court expounded on the *Strickland* burden of proof analysis under the prejudice prong, it held:

> A reasonable probability of a different result requires a probability sufficient to undermine confidence in the outcome. Although this standard is not mathematically precise and does not necessarily require a showing of more likely than not, *Strickland* requires more than a showing merely that the conduct could have or might have or it is possible that it would

have led to a different result. The likelihood of a different result must be substantial, not just conceivable.[17]

In the context of Harden's case, the judge cited a list of serious aggravating factors to justify her decision to impose Level V time beyond what the State was asking for. In fact, the judge could have legally imposed a sentence of up to life in prison, but did not. What is apparent, however, is that even the most prepared and eloquent of defense counsel could not have changed the basic facts upon which the court imposed sentence. As the sentencing judge noted in the Order denying Harden's Rule 35(a) motion for reduction of sentence:

> The Court took into consideration that Defendant waited for his victim/girlfriend at the front of her home and barged in, wherein he proceeded to strike her in the face, knocking her down and then kicked her in the head, stomach and ribs. Her injuries included nasal fractures and knocked out teeth. He did so in the presence of a five year old who ran outside screaming and hid in a car. He threatened to kill the victim if she contacted the police. Subsequently, Defendant attempted to manipulate his victim's testimony prior to trial. At sentencing, the Court took into consideration aggravating factors that included Defendant's prior violent conduct, undue depreciation of the offense, lack of remorse, lack of amenability, his statutory habitual offender status and the domestic violence and child victim/witness involved in this crime. As such, the Court's sentence was appropriate and well within the statutory penalties.[18]

---

[17] *Neal v. State*, 80 A.3d 935, 942 (Del. 2013) (internal quotations and citations omitted).

[18] D.I. #40 at p2.

Harden's motion does an admirable job of marshalling an argument that Defense Counsel was deficient under *Strickland* by citing to the ABA Standards for Criminal Justice and the Delaware Lawyers' Rules of Professional Conduct. However, what is evident is that Defense Counsel's task was an uphill climb and that his comments at sentencing were an attempt to put the best possible spin on an otherwise horrible situation. Frankly, it is hard to imagine what else Defense Counsel could have legitimately stated to the Court to ameliorate the situation Harden had put himself in considering his actions during the incident and prior to trial.[19] Notably, Harden's Motion fails to identify or present anything else Defense Counsel might have said that would have impacted the outcome—it only takes issue with what Defense Counsel did say.

Finally, Harden claims in his Motion that he was "essentially denied the opportunity to present an allocution bearing even a neutral impression."[20] Harden is not arguing that he was denied an opportunity to allocute; rather, that because Defense Counsel did not adequately prepare him for his allocution, he said things that made his situation worse. The fact that Harden did not endear himself to the Court with his statement and it was not at least "neutral" in tone is not the fault of Defense Counsel. It is not Defense Counsel's job to script an allocution for the

---

[19] E.g. the numerous letters and acts of witness intimidation he engaged in prior to trial.

[20] D.I. #72 at p7.

10

client; such a presentation would undoubtedly be viewed by the Court as contrived and disingenuous, to say the least.

Nevertheless, Harden does not cite specifically what information he would have otherwise presented, his Motion only alludes to "his psychological and traumatic familial background" and "past success with mental health treatment."[21] Again, without concrete examples of the specific nature of the mitigating evidence that Harden could have presented, I am left to speculate as to what he might have said and can only hypothesize as to if it might have had any effect on the sentence he received. Without any concrete evidence, Harden's assertion is conclusory in nature and fails to meet the *Stickland* standard.

---

[21] *Id* at p8.

## Conclusion

In light of the serious nature of the offense, multiple aggravating factors, and the Court's inherent discretion as to the possible sentence, I cannot find that Harden *probably* would have received a sentence of less than 18 years based on the facts and arguments presented in Harden's Motion. Therefore, *even if* Defense Counsel's performance at sentencing was deficient, a finding I am not making at this time, Harden was not prejudiced by Defense Counsel's conduct and his Motion should be **Denied**.

**IT IS SO RECOMMENDED.**

Bradley V. Manning,
Commissioner

oc:  Prothonotary
cc:  Counsel via email.

12