IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| DAMON SMITH, | § | |
| | § | No.   317, 2017 |
| Defendant Below, | § | |
| Appellant, | § | Court Below:   Superior Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | I.D. No. 1309013274 (N) |
| STATE OF DELAWARE, | § | |
| | § | |
| Plaintiff Below, | § | |
| Appellee. | § | |

Submitted:   March 7, 2018
Decided:   May 24, 2018

Before **STRINE**, Chief Justice; **VALIHURA** and **VAUGHN**, Justices.

**O R D E R**

On this 24th day of May 2018, upon consideration of the parties' briefs and the record on appeal, it appears to the Court that:

(1)   Appellant, Damon Smith ("Smith"), appeals from a Superior Court denial for postconviction relief.   He contends that the Superior Court erred when it denied his request for postconviction relief for ineffective assistance of counsel.

(2)   On September 18, 2013, at 6:00 p.m. New Castle County Police Department Officer Michael Zolnowski went to 172 Winder Road in New Castle, Delaware, to investigate a report of a fight in progress involving a firearm.   While en route, he learned that individuals involved in the fight had fled in a gold Honda

Accord. A black male wearing a white t-shirt and blue jeans was present during the altercation and in possession of a black revolver. Officer Zolnowski responded to another location where an off-duty officer had stopped the gold Honda Accord.

(3) Antonia Brown was the driver of the Honda Accord and Smith was in the passenger seat. Smith was wearing a white t-shirt and blue jeans. Underneath the Accord's passenger seat was a black revolver. Smith was arrested.

(4) Antonia Brown told the officers that she, Smith, and her boyfriend, John Smith ("John"), who was Smith's nephew, had gone to her mother's house at 172 Winder Road. Angela Brown (Antonia's mother), her fiancé Derrick Byrd, and her minor son Ty Brown were at 172 Winder Road. Angela stated that she was in her house and saw two men exit the vehicle, John, and a man who was later determined to be Smith. Angela observed John pull a black revolver from his waistband and wave it at Byrd, who was in front of the house. Angela testified that John and Smith passed the gun back and forth, both waving it at Byrd. Byrd retreated into the house and Angela watched as John yelled at Byrd from outside. John hurled insults and accused Byrd of hitting Russel Brown, Angela's son.

(5) Eventually, Angela exited the house making her way along the driveway and began to argue with her daughter Antonia. Sometime during the argument Angela's ex-husband Anthony Brown and his girlfriend Cache Clifton arrived on the scene. Clifton yelled at Angela, but kept her distance from the house.

After the argument concluded, Antonia and Smith left in the gold Honda Accord. Angela did not see where John went.

(6)     Byrd told Officer Zolnowski that John and Damon Smith had passed the revolver back and forth, both waving the gun at him and Angela.   Byrd also said John fled on foot, and Smith was the last to possess the handgun.

(7)     Smith was indicted on two counts of Possession of a Firearm During the Commission of a Felony ("PFDCF"), two counts of Aggravated Menacing, one count of Possession of a Deadly Weapon by a Person Prohibited ("PDWBPP"), two counts of Conspiracy Second Degree, and one count of Carrying a Concealed Deadly Weapon.   The conspiracy charges were dismissed after a preliminary hearing.

(8)     On March 12, 2014, the Superior Court issued a Scheduling Order, scheduling case reviews for March 17, 2014 and June 30, 2014.   Trial was scheduled for July 8, 2014.   At his second case review, Smith rejected a plea offer made by the State.   The morning of Smith's trial he pled guilty to one count of Aggravated Menacing and one count of PFDCF.   As part of the plea offer, Smith agreed to be sentenced as an habitual offender.   On October 3, 2014, the State filed a motion to declare Smith an habitual offender.

(9)     The State's motion to declare Smith an habitual offender was granted, and the Superior Court sentenced Smith to ten years at Level V with no probation to follow.   On July 20, 2015, Smith filed a *pro se* motion for correction/modification

of sentence, which was denied by the Superior Court on August 12, 2015. On December 18, 2015, Smith filed a motion for postconviction relief claiming ineffective assistance of counsel. As a basis for his ineffective assistance of counsel claim, Smith asserted that trial counsel: (1) did not subpoena any witnesses; (2) failed to file a motion to suppress evidence at Smith's request; (3) failed to obtain an earlier sentence recommendation from the earlier rejected plea offer; (4) was unaware of Smith's trial date; (5) told Smith "sometimes we need to do things that we do not want to do and accept things for what they are"; and (6) was overall incompetent, and lacked communication and diligence.[1]

(10) On January 5, 2016, the Superior Court directed the Office of Conflict Counsel to appoint counsel for Smith. Counsel was appointed on May 11, 2016. On October 27, 2016, Smith, through his appointed counsel, filed an amended motion for postconviction relief. The amended petition claimed that trial counsel was ineffective for lack of diligence in trial preparation by not subpoenaing witnesses and neglecting to seek certain discovery. On November 17, 2016, trial counsel filed an affidavit responding to Smith's ineffective assistance of counsel claims. The State filed an answer and Smith filed a reply. On July 7, 2017, the Superior Court denied Smith's postconviction relief motion. This appeal followed.

---

[1] App. to Appellant's Opening Brief at A089-02.

4

(11) The Superior Court's denial of a Rule 61 motion for postconviction relief is reviewed for an abuse of discretion.[2] Questions of law are reviewed *de novo*.[3]

(12) The two-pronged test for ineffective assistance of counsel claims was established by the United States Supreme Court in *Strickland v. Washington*.[4] First, a defendant must show that his "counsel's representation fell below an objective standard of reasonableness."[5] "Second, the defendant must show that the deficient performance prejudiced the defense."[6]

(13) Trial counsel's actions "are afforded a strong presumption of reasonableness" because of the "distorting effects of hindsight."[7] The challenged conduct must be evaluated "from the counsel's perspective at that time."[8]

(14) If a defendant is able to demonstrate "that his counsel's conduct fell below an objective standard of reasonableness," he must then demonstrate counsel's error was "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."[9] "Defendant must establish 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been

---

[2] *Neal v. State*, 80 A.3d 935, 941 (Del. 2013).
[3] *Id.*
[4] 466 U.S. 668 (1984).
[5] *Id.* at 687.
[6] *Id.*
[7] *Neal*, 80 A.3d at 941-42 (citing *Strickland*, 466 U.S. at 689).
[8] *Strickland*, 466 U.S. at 689.
[9] *Neal*, 80 A.3d at 942 (citing *Strickland*, 466 U.S. at 687).

5

different.'"[10]

(15)    Smith's ineffective assistance of counsel claim on appeal boils down to trial counsel's failure to subpoena three witnesses, Anthony Brown, Cache Clifton, and Antonia Brown.   Smith argues that because he was informed on the morning of his trial that trial counsel had subpoenaed no witnesses, he was compelled to enter into the plea agreement.

(16)    Both Cache Clifton and Anthony Brown arrived while the incident was already in progress.   During the confrontation, Anthony Brown stayed in an adjacent parking lot and told investigators he did not actually see anyone in possession of a gun.   Upon her arrival, Cache Clifton took Anthony Brown's children to a baseball field near the adjacent parking lot, at least 100 yards from the scene.   Cache Clifton also told investigators that she did not see a gun.

(17)    Though Antonia Brown was not subpoenaed, she was present the day of trial and was interviewed by trial counsel prior to Smith accepting his plea agreement.   At final case review, trial counsel had informed Smith he was having trouble contacting Antonia Brown.   Smith informed trial counsel that he was in contact with Antonia Brown and would ensure she was present at trial.   Smith did not provide further contact information.

(18)    The trial court ruled that counsel was objectively reasonable when he

---

[10] *Id.* (citing *Strickland*, 466 U.S. at 694).

decided not to subpoena Anthony Brown, Cache Clifton, and Antonia Brown. We find no error in this ruling. Cache Clifton and Anthony Brown both arrived mid-altercation, and kept their distance. Although Anthony Brown told investigators that he did not actually see anyone in possession of a firearm, he also told investigators that he believed Smith had one. Cache Clifton had moved away from the incident, nearly a football field's length away. While both witnesses could have testified that they did not see a gun, it was reasonable for trial counsel not to subpoena them as witnesses because of their lack of proximity to the scene of the offenses. With regard to Antonia Brown, trial counsel had informed Smith that he was having trouble reaching Antonia Brown to subpoena her for trial. Smith informed trial counsel that he was in contact with her and would ensure that she was present. Smith did not provide additional contact information. While trial counsel did not serve Antonia Brown a subpoena, it was objectively reasonable for him to believe he did not have to for the reasons stated. In fact, Antonia Brown was present the day of trial, where trial counsel interviewed her prior to Smith's plea, and she was in the courtroom when Smith pled guilty.

(19) Accordingly, the trial court did not err by concluding that trial counsel's decision not to subpoena any of the three witnesses falls within the strong presumption that trial counsel's representation was objectively reasonable.[11]

---

[11] *Flamer v. State*, 585 A.2d 736, 753 (Del. 1990).

7

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is **AFFIRMED.**

BY THE COURT:

/s/   James T. Vaughn, Jr.
Justice