IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| BRANDON ALSTON, | § | |
| | § | No. 16, 2015 |
| Defendant Below- | § | |
| Appellant, | § | Court Below: Superior Court |
| | § | of the State of Delaware in and |
| v. | § | for Sussex County |
| | § | |
| STATE OF DELAWARE, | § | No. 120901415 |
| | § | |
| Plaintiff Below- | § | |
| Appellee. | § | |

Submitted: August 19, 2015
Decided: September 4, 2015

Before **HOLLAND, VALIHURA**, and **VAUGHN**, Justices.

### *ORDER*

On this 4th day of September 2015, it appears to the Court that:

(1) Defendant-Below/Appellant Brandon Alston ("Alston") appeals from a Superior Court order denying his Rule 61 Motion for Postconviction Relief. Alston raises one claim on appeal related to the performance of his trial counsel. He argues that his trial counsel did not conduct a sufficient investigation before advising him to plead guilty to five of the crimes for which he was indicted. Alston further argues that had a sufficient investigation been conducted, evidence that proved his innocence would have arisen and he would not have pleaded guilty. We find no merit to Alston's appeal and affirm.

1

(2) On September 14, 2012, police responded to a call reporting a shooting in progress at 332 North Street, Seaford, Delaware. Witnesses stated that Alston had twice driven by Victor Hammond's house in a silver Dodge Magnum while firing shots at the residence. Hammond was dating Alston's ex-girlfriend, Dashon Wright, at the time of the shooting. After being informed that Alston was fleeing the area in the Dodge Magnum, officers proceeded to Alston's residence at 527 Third Street.

(3) While outside Alston's residence, officers observed Alston leave his house with what was believed to be a firearm. Alston ran behind his residence and towards the house next door. While in the gap between the two houses, one of the officers stated that he saw Alston pointing a gun at him. The officer fired three shots at Alston, but missed all three times. Alston was apprehended, but no firearm was found on his person. Soon thereafter, Alston's mother approached the police on scene and informed them that she had spoken with Alston. During her conversation with Alston, Alston told her that he discarded the gun in a bush near his neighbor's house. After speaking with Alston's mother, police recovered the gun from a bush near 525 Third Street, close to the path Alston took while running from the police.

(4) Officers also arrested a man named Jamil Brown, who was in the Dodge Magnum with Alston when the shooting at 332 North Street occurred. Brown informed officers that Alston was the shooter and driver of the Dodge Magnum at the

2

332 North Street shooting.

(5) On November 19, 2012, Alston was indicted on thirty-four counts of criminal activity: seven counts of Aggravated Menacing; fifteen counts of Possession of a Firearm During the Commission of a Felony; seven counts of Reckless Endangering in the First Degree; two counts of Possession of a Deadly Weapon by a Person Prohibited; one count of Discharging a Firearm; one count of Resisting Arrest with Force; and one count of Driving While Suspended or Revoked. On March 14, 2013, trial counsel was appointed for Alston.

(6) In preparation for the trial, Alston provided his appointed trial counsel with the name of an alleged exculpatory witness, Jun Aiken.[1] According to Aiken's affidavit, she witnessed Alston's flight from 527 Third Street, and claims she did not see him with a firearm. Alston's trial counsel did not contact Aiken in preparation for his trial or plea colloquy.

(7) On May 6, 2013, Alston pleaded guilty, under oath, to five of the thirty-four counts for which he was indicted.[2] Alston stated that he understood what rights he was giving up, that he had no complaints about the representation provided by his defense counsel, and that he had discussed the consequences of pleading guilty with

[1] The name specified in Alston's letter was June Atkins. However, "Jun Aiken" is the correct spelling according to Ms. Aiken's affidavit.
[2] The plea agreement resolved the indictments from both the shooting incident on September 14, 2012, and a separate drug-related incident on October 7, 2011.

3

his defense counsel.

(8) On August 19, 2013, Alston submitted a *pro se* motion for postconviction relief alleging ineffective assistance of counsel. On March 24, 2014, Rule 61 counsel submitted an amended motion for postconviction relief on Alston's behalf. On May 27, 2014, Rule 61 counsel submitted a supplemental motion for postconviction relief. On December 16, 2014, the Superior Court denied Alston's motion for postconviction relief. This appeal followed.[3]

(9) Alston asks that we reverse the Superior Court's denial of postconviction relief on the grounds that his trial counsel was ineffective when he failed to review evidence that would have shown his innocence. "We review a Superior Court judge's denial of a Rule 61 motion for postconviction relief for abuse of discretion."[4]

(10) The rule governing ineffective assistance of counsel in *Strickland v. Washington*.[5] In *Strickland*, the United States Supreme Court ruled that in order to prove ineffective assistance of counsel, the defendant must show (1) deficient performance and (2) that the deficient performance prejudiced the defense.[6]

---

[3] Puzzlingly, Rule 61 appointed counsel filed a motion to withdraw from the motion for postconviction relief the day after the Superior Court judge's order denying the motion for postconviction relief was filed, stating: "After careful consideration of this matter, as an officer of this court, I have no good faith basis to pursue the amended motion for postconviction relief. Therefore, I am respectfully withdrawing it."

[4] *Hoskins v. State*, 102 A.3d 724, 728 (Del. 2014) (quoting *Neal v. State*, 80 A.3d 935, 941 (Del. 2013)); *Flamer v. State*, 585 A.2d 736, 754 (Del. 1990).

[5] *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).

[6] *Id.* at 687.

4

(11) Counsel's performance is deficient when "counsel's representation fell below an objective standard of reasonableness . . . ."[7] There is a strong presumption that trial counsel's representation of his or her client was professionally reasonable.[8] While defense counsel has a general duty to investigate any mitigating or exculpatory evidence, counsel is not required to "pursue all lines of investigation about potentially mitigating evidence."[9]

(12) In *Flamer v. State*, defense counsel presented a list of seven mitigating factors to be considered at the penalty stage of the defendant's trial.[10] However, defense counsel chose not to present evidence and witness testimony relating to other potentially mitigating factors.[11] The Superior Court denied the defendant's motion for postconviction relief, and the defendant appealed to this Court.[12] Upon examining the reasonableness of the defense counsel's conduct, this Court determined that defense counsel has no absolute responsibility to present all potentially mitigating or exculpatory evidence.[13]

(13) Similarly, in *Wilkinson v. State*, this Court determined that defense counsel

---

[7] *Flamer*, 585 A.2d at 753 (quoting *Albury v. State*, 551 A.2d 53, 58 (1988)).
[8] *Id.*
[9] *Id.* at 756 (discussing the duty to investigate in the context of the penalty stage).
[10] *Id.*
[11] *Flamer v. State*, 585 A.2d 736, 756 (Del. 1990).
[12] *Id.* at 741.
[13] *Id.* at 756-57.

5

was not ineffective when he chose not to investigate certain alibi witnesses.[14] In *Wilkinson*, the defendant alleged, *inter alia*, that his defense counsel failed to interview potentially exculpatory witnesses.[15] This Court found that this fact alone was not sufficient to show ineffective assistance of counsel.[16]

(14) We have held that in a situation where a defendant claims his counsel was deficient because he failed to provide the defendant with enough information to make an informed guilty plea, the defendant must show that counsel was deficient by clear and convincing evidence.[17]

(15) Here, Alston argues that his defense counsel's performance was deficient because his innocence could have been brought to light if his counsel had interviewed Aiken. This argument is without merit. As stated in *Flamer*, defense counsel does not have a duty to investigate all evidence that might be helpful to the defendant's case. Alston's defense counsel conducted an adequate investigation based on a police report and eyewitness testimony. Alston was not required to interview all potential defense witnesses before advising Alston to plead guilty. If Alston believed himself to be innocent, and believed there was an exculpatory witness available to testify, he should not have taken the guilty plea and proceeded to trial. The record shows that

---

[14] *Wilkinson v. State*, 2012 WL 6597844, at *1 (Del. Dec. 17, 2012).

[15] *Id.* The defendant also alleged that defense counsel had a drinking problem. *Id.*

[16] *Id.*

[17] *Krafchick v. State*, 2014 WL 4264926, at *2 (Del. Aug. 28, 2014).

he entered the guilty plea of his own free will after having fully discussed the matter with his counsel. Alston does not argue on appeal that his plea was not knowing and voluntary,[18] and he is bound by those concessions on appeal.

(16) In claiming ineffective assistance of counsel, the defendant must show that counsel's deficiency prejudiced the outcome of his case.[19] "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[20] The defendant must make specific allegations of how defense counsel's conduct actually prejudiced the proceedings, rather than mere allegations of ineffectiveness.[21] "[The] failure to state with particularity the nature of the prejudice experienced is fatal to a claim of ineffective assistance of counsel."[22] "Where the alleged error of counsel is a failure to investigate, a determination of 'prejudice' to the defendant by causing him to plead guilty depends upon the likelihood that the additional effort by counsel would have

---

[18] *See Somerville v. State*, 703 A.2d 629, 631-32 (Del. 1997) (citations omitted):

> The judge must determine that the defendant understands the nature of the charges and the penalties provided for each of the offenses. The record must reflect that the defendant understands that the guilty plea constitutes a waiver of a trial on the charges and a waiver of the constitutional rights to which he or she would have been entitled to exercise at a trial. The trial judge must also determine that a guilty plea is not the result of force, threats, or promises apart from the plea agreement. *i.e.*, is voluntary.

[19] *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

[20] *Id.* at 694.

[21] *Wright v. State*, 671 A.2d 1353, 1356 (Del. 1996).

[22] *Dawson v. State*, 673 A.2d 1186, 1196 (Del. 1996).

led to a change in counsel's recommendation as to that plea."[23]

(17) Alston has failed to offer any substantiated evidence showing that his trial counsel's failure to further investigate affected his recommendation that Alston plead guilty. Alston offers only hypothetical arguments on appeal, claiming that had his defense counsel conducted a sufficient investigation, his innocence would have been revealed, and he would not have entered a plea. But in light of the other evidence against him, these allegations are simply insufficient to substantiate his claim. Alston's mother informed police of where the gun was located based on information she received from Alston. The passenger in the car with Alston at the time of the shooting on North Street stated that Alston fired the gun. The bush in which the gun was found was very close to the path Alston ran along in an attempt to avoid capture. Based on the strength of the State's case, and the fact that Alston knowingly and voluntarily pleaded guilty, his allegations regarding his defense counsel's conduct fail under the second prong of the *Strickland* test.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is **AFFIRMED**.

BY THE COURT:

Justice

---

[23] *Albury v. State*, 551 A.2d 53, 59 (Del. 1988) (citing *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985)).