IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| JERMAINE LASTER, | § | |
| | § | No. 236, 2018 |
| Defendant Below, | § | |
| Appellant, | § | Court Below: Superior Court of |
| | § | the State of Delaware |
| v. | § | |
| | § | I.D. No. 1307014887 (N) |
| STATE OF DELAWARE, | § | |
| | § | |
| Plaintiff Below, | § | |
| Appellee. | § | |

Submitted: December 12, 2018
Decided: February 8, 2019

Before **VALIHURA**, **VAUGHN**, and **SEITZ**, Justices.

**O R D E R**

On this 8th day of February 2019, upon consideration of the parties' briefs and the record on appeal, it appears that:

(1)    Appellant, Jermaine Laster, appeals from a Superior Court order denying his motion for postconviction relief.   He asserts three claims of ineffective assistance of counsel.   His first contention relates to a jury note.   He contends that his trial counsel was ineffective because he failed to ask the trial court to respond to the note by instructing the jury to follow the jury instructions as originally given. Second, he contends that his trial counsel was ineffective because he failed to retain an investigator to aid in impeaching the State's witnesses and to develop other potential defense witnesses.   Third, he contends that his trial counsel was

ineffective because he failed to retain a firearms expert to mitigate the testimony of the State's firearms expert and to otherwise aid in his defense.

(2)     On August 6, 2013, Laster was arrested in connection with a shooting that took place on July 17, 2013.   The shooting resulted in a five-year-old girl sustaining a gunshot wound to her left leg.   Laster was indicted for Assault in the First Degree and related offenses.   He retained private counsel, and the case proceeded to trial in June 2014.

(3)     At trial, the State's case consisted primarily of eyewitness testimony. There was no direct physical evidence linking Laster to the shooting.   According to the testimony of six eyewitnesses (one of whom was Laster's wife), the following occurred on the day of the shooting.   On the evening of July 17, 2013, Laster argued with Jeff Williams, resulting in Williams punching Laster in the face and knocking him to the ground.   Laster then went into his nearby residence to get his gun.   His wife heard him say, "That [guy] snuck me.   I'm getting my gun."[1]   When he came back out, he chased after Williams up the street and began shooting towards him, firing several shots.   One of these several shots hit the victim, who was in front of her nearby residence.   In jail, Laster admitted to Shannon Nisky (one of the eyewitnesses and a friend of Laster's) that he shot the victim.

---

[1] App. to Appellant's Opening Br. at A90.

2

(4)    Three of the eyewitnesses, Carlos Hernandez, Nisky, and Williams, had credibility issues that were brought out during their examinations. They all admitted they were addicted to and had used heroin the day of the shooting. Hernandez and Nisky admitted they were convicted felons, and Williams admitted he had been convicted of criminal impersonation within the last ten years. It was shown that all three had made prior inconsistent statements to the police. None of these prior inconsistent statements, however, called into doubt the fact that Laster chased Williams up the street while firing several shots. And none suggested that someone other than Laster fired any shots, let alone the shot that hit the victim. All of them admitted to making deals with the State in exchange for cooperating in this case.

(5)    In addition to eyewitness testimony, the State called Carl Rone, a firearms expert, to testify about two bullets recovered at the scene and two cartridge cases that Laster's wife gave to the police the day after the shooting. Rone testified that because no firearm was recovered, he conducted a side-by-side comparison of the bullets, which he labeled Item 1 (a bullet jacket) and Item 2 (a fully intact bullet). From this comparison he concluded that Item 1 and Item 2 had been fired from the same weapon—a .44 caliber revolver marketed by Ruger, Sauer and Sohn's, Interarms, or Hawes. Rone also compared the two cartridge cases. He concluded that these cases were fired from the same firearm. Because Rone did not have a

3

firearm to make the required comparisons, however, he explained that he could not determine whether the bullets were fired from the same firearm as the cartridge cases. Rone also noted that the cases could have been fired from any gun chambered in .44 magnum, including a revolver or a semiautomatic firearm, but because the cases did not have any extractor or ejector marks, Rone believed they were fired from a revolver.

(6) Laster did not present any evidence in his defense.

(7) During its deliberations, the jury submitted a note to the trial court asking for clarification regarding the intent element in the charge of Assault in the First Degree. The note began by repeating an element of Assault in the First Degree set forth in the original instructions: "The defendant recklessly engaged in conduct that created a substantial risk of death to [the victim]."[2] This statement was then followed by a question: "Is this specific intent to [the victim] alone or any unjustifiable risk that death to another could result?"[3] The court asked the jury to define what it meant by "specific intent."[4] The jury then added the following questions to its note: "Does 'substantial risk of death' need to be directed at [the victim] specifically to be charged with Assault in the First Degree? In other

---

[2] *Id.* at A131; *see also id.* at A138.
[3] *Id.* at A138.
[4] *Id.* at A134.

4

words[,] does intent of risk need to be directed at [the victim] specifically?"[5] The State, Laster's trial counsel, and the court conferred regarding the jury note and agreed to the following response: "The reckless state of mind is an issue, not intent."[6]

(8) The jury then found Laster guilty of Assault in the First Degree, three counts of Possession of a Firearm During the Commission of a Felony, and two counts of Reckless Endangering in the First Degree. Following the jury trial, the trial judge found Laster guilty of Possession of a Deadly Weapon by a Person Prohibited and Possession of Ammunition by a Person Prohibited.

(9) Laster filed his initial motion for postconviction relief *pro se*, alleging violation of spousal communication privilege, prosecutorial misconduct, and judicial misconduct. Counsel was appointed, and an amended motion was filed in which Laster asserted the ineffective-assistance claims at issue in this appeal.

(10) Laster's trial counsel filed an affidavit responding to the postconviction relief claims. As to the claims regarding the need for a private investigator and a firearms expert, Laster's trial counsel explained that the decision not to seek an outside investigator or a firearms expert was made after conferring with Laster and his family and considering trial strategy. As to the claim regarding the jury note,

---

[5] *Id.* at A138.
[6] *Id.* at A136.

Laster's trial counsel explained that his failure to object to the court's answer to the jury note was not prejudicial to Laster.

(11) We review the Superior Court's denial of a Rule 61 motion for postconviction relief for abuse of discretion.[7] We review legal and constitutional questions *de novo*.[8]

(12) To prevail on a claim of ineffective assistance of counsel, the defendant must satisfy the two-prong standard of *Strickland v. Washington*.[9] Under *Strickland*, the defendant must prove that his trial counsel's performance was objectively unreasonable and that his defense was prejudiced as a result.[10] Although judicial scrutiny under the first prong is "highly deferential" and courts must proceed with a "strong presumption" that counsel's conduct was reasonable,[11] there is no need to analyze whether an attorney performed deficiently if the alleged deficiency did not prejudice the defendant.[12]

(13) Under the second prong, "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding."[13] In

---

[7] *Neal v. State*, 80 A.3d 935, 941 (Del. 1994).
[8] *Brooks v. State*, 40 A.3d 346, 353 (Del. 2012) (en banc).
[9] 466 U.S. 668, 687-88 (1984).
[10] *Id.*
[11] *Id.* at 689.
[12] *Ploof v. State*, 75 A.3d 811, 825 (Del. 2013) (en banc); *see also Strickland*, 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.").
[13] *Strickland*, 466 U.S. at 693.

other words, "not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding."[14] The movant "must make specific allegations of actual prejudice and substantiate them."[15] These allegations must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[16]

(14) Laster's first claim of ineffective assistance of counsel is that his trial counsel was ineffective by failing (1) to object to the court's response to the jury note and (2) to ask the court to instruct the jury to follow the jury instructions as originally given. A criminal defendant is entitled to an accurate statement of the law, but not a particular jury instruction.[17] The Superior Court found, and Laster does not contest, that the court's response to the jury note was an accurate statement of the law. As the State points out in its brief, it appeared that "the jury was confused about whether Laster had to specifically have directed his reckless act at the five-year-old [the victim] in order to find him guilty of first degree assault."[18] Under the first-degree assault statute, a person must "recklessly engage[] in conduct which creates a substantial risk of death to another person."[19] The trial court (with

---

[14] *Id.*
[15] *Outten v. State*, 720 A.2d 547, 552 (Del. 1998) (en banc) (quoting *Wright v. State*, 671 A.2d 1353, 1356 (Del. 1996) (en banc)).
[16] *Albury v. State*, 551 A.2d 53, 58 (Del. 1988) (quoting *Strickland*, 466 U.S. at 694).
[17] *Flamer v. State*, 490 A.2d 104, 128 (Del. 1984) (en banc).
[18] Appellee's Answering Br. at 12.
[19] 11 *Del. C.* § 613(a)(3).

input from the prosecution and Laster's trial counsel) was correct in focusing the jury back to Laster's state of mind (whether he was reckless) and away from whether he specifically intended to injure the victim.

(15) Despite the fact that the court's response to the jury note was an accurate statement of the law, Laster argues that the response prejudiced him. He argues that the court's response to the jury note caused the jurors to focus on the response, rather than the original instruction. Had the jury followed the original instruction, he argues, it might have found him guilty of the lesser-included offense of Assault in the Second Degree. In substance, Laster's argument is that the jurors must have focused on the court's response—that is, whether Laster acted recklessly—and must have disregarded the original instruction for Assault in the First Degree, which, in addition to requiring them to find that Laster acted recklessly, required them to find that Laster's conduct created "a substantial risk of death to [the victim]."[20] Assault in the Second Degree, by contrast, does not require a finding of a substantial risk of death to another.[21]

(16) Laster's argument of prejudice is pure speculation that does not pass the *Strickland* test. The trial court neither told the jury to disregard the prior instruction nor indicated that it was altering the prior instruction. Moreover, the

---

[20] App. to Appellant's Opening Br. at A110.
[21] *See* 11 *Del. C.* § 612(a).

8

trial court's response to the jury note did not indicate to the jurors that they no longer needed to find that Laster's conduct created a substantial risk of death to the victim to convict him of Assault in the First Degree.[22]   Laster has not shown that there is a "reasonable probability" that, but for counsel's alleged unprofessional errors and the trial court's response to the jury note, "the result of the proceeding would have been different."[23]

(17)   Laster next contends that his trial counsel was ineffective because he failed to retain an investigator to aid in impeaching the State's witnesses and to develop other potential defense witnesses.   He fails, however, to make any specific allegations of prejudice—let alone substantiate them.   The Superior Court explained, "While it is conceivable that an investigator may have found other witnesses or that they might have been able to find more impeachment evidence against the State's witnesses, [Laster] cannot point to any specifics that help his case."[24]   And the Superior Court correctly stated that "[t]he record reflects that trial counsel on cross-examination effectively elicited testimony from witnesses regarding drug use on the day in question and prior inconsistent statements made to police" and that Laster "also failed to identify other potential witnesses or what

---

[22] *See Flamer*, 490 A.2d 128 ("In evaluating the propriety of a jury charge, the entire instruction must be considered with no statement to be viewed in a vacuum.").

[23] *Albury*, 551 A.2d at 58.

[24] Appellant's Opening Br. Ex. A, at 6.

testimony they might provide in pursuit of a different outcome."[25]   The Superior Court did not err in denying this ground for relief.

(18)  Finally, Laster contends that his trial counsel was ineffective because he failed to retain a firearms expert to mitigate the testimony of the State's expert and to aid in Laster's defense.   This final claim also fails the second prong of the *Strickland* test because Laster has failed to make and substantiate specific allegations of prejudice.   Laster argues that a firearms expert could have testified concerning two things that, in his opinion, would have helped his case.   First, he says that a firearms expert could have testified that, due to the damage to Items 1 and 2, there was no way to confirm whether they were discharged from the same firearm.   This, however, is a conclusory statement without support.   Laster has not identified any expert nor indicated what his or her testimony might be.[26]   Second, Laster argues that a firearms expert could have "clearly explained" the lack of connection between the bullets and the casings.[27]   But the State's firearms expert explicitly admitted that he could not say whether the bullets and the casings were fired from the same gun. As the Superior Court explained, "Offering a second expert to testify that a link

---

[25] *Id.*

[26] *See Outten*, 720 A.2d at 553 ("Because [the defendant] has failed to both identify the witnesses and indicate what their potential testimony might be, and because this Court will not speculate concerning that evidence, [the defendant] has failed to show the actual prejudice he allegedly has suffered by his counsel's failure to investigate and present these witnesses.").

[27] Appellant's Opening Br. at 27.

between the bullets and casings could not be established would be cumulative and unnecessary."[28]   The Superior Court did not err in denying this ground for relief.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is **AFFIRMED.**

BY THE COURT:

/s/   James T. Vaughn, Jr.
Justice

---

[28] *Id.* Ex. A, at 7.