IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| TYRONE BUSSEY, | § | |
| | § | No. 324, 2019 |
| Defendant Below, | § | |
| Appellant | § | Court Below: Superior Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | Cr. ID: 1503013837A |
| STATE OF DELAWARE, | § | |
| | § | |
| Plaintiff Below, | § | |
| Appellee. | § | |

Submitted: January 15, 2020
Decided: February 11, 2020

Before **SEITZ**, Chief Justice; **VALIHURA** and **TRAYNOR**, Justices.

## **ORDER**

This 11th day of February, 2020, after careful consideration of the parties' briefs and the record on appeal, it appears to the Court that:

(1)    A Superior Court jury found Tyrone Bussey guilty of thirteen criminal offenses, including two counts of aggravated menacing, two counts of possession of a firearm during the commission of a felony, two counts of terroristic threatening, assault in the third degree, and four counts of endangering the welfare of a child. The Court sentenced Bussey to a total of eleven years and 150 days of Level V

incarceration followed by decreasing levels of supervision.  We affirmed Bussey's convictions on direct appeal.[1]

(2)     Bussey moved for postconviction relief under Superior Court Criminal Rule 61, contending that his trial counsel was ineffective because he did not object to the admission, under 11 *Del. C.* § 3507,[2] of certain statements he made to police on the night of his arrest and did not properly cross-examine the two officers on the timing of their preparation of their reports.  The Superior Court denied the motion,[3] and Bussey appealed.  We conclude that Bussey has not shown that he was prejudiced by his trial counsel's allegedly deficient performance, and, therefore, we affirm.

(3)     The charges against Bussey arose from a domestic argument between Bussey and his girlfriend, Kolanda Shelton.  At the scene, Shelton told a first responder that Bussey punched her in the face, held a gun to her head, and threatened to kill her.  Bussey then dragged Shelton to the backyard, and her son—having also been threatened by Bussey—ran across the street to a neighbor's house to call the

---

[1] *Bussey v. State*, 159 A.3d 713, 2017 WL 1215763 (TABLE) (Del. 2017).
[2] Under 11 *Del. C.* § 3507, "[i]n a criminal prosecution, the voluntary out-of-court prior statement of a witness who is present and subject to cross-examination may be used as affirmative evidence with substantive independent testimonial value."  That prior out-of-court statement, however, should not be an interpretive narrative of the prior statement.  *See Higgins v. State*, 337 A.2d 28, 29–30 (Del. 1975).
[3] *State v. Bussey*, 2019 WL 2613109 (Del. Super. Ct. June 26, 2019).

police.  Bussey fled the scene when he heard the police arrive.  Police later found the gun in Shelton's backyard.

(4)     Two officers of the Laurel Police Department, Corporals Haddock and Kansak, took statements from Shelton that night.   Shelton's son also gave a statement. Police arrested Bussey in the early morning hours following the altercation.

(5)     After Bussey's arrest, the Justice of the Peace Court entered a no-contact order, prohibiting Bussey from having any contact with Shelton or her children.  In violation of that order, Bussey contacted Shelton by mail and by phone numerous times while he was detained pending trial.   In those calls, which were recorded, Bussey and Shelton discussed changing the statement that Shelton had given to the police about Bussey having a gun during the altercation, hoping to undermine his aggravated-menacing and possession-of-a-firearm-during-the-commission-of-a-felony ("PFDCF") charges.   At trial, Shelton and her son testified—inconsistently with their statements to police—that Bussey did not have a gun during the altercation.  The trial court allowed the State to introduce Shelton's and her son's prior statements as § 3507 statements.

(6)     Bussey claims that the Superior Court abused its discretion by denying his motion for postconviction relief.  He argues that his trial counsel did not have a valid strategic reason for failing to challenge the admissibility, accuracy, and

3

reliability of the § 3507 statements. Specifically, he contends that his trial counsel unreasonably failed to object to the State's admission of Shelton's § 3507 statements which, in his view, were inadmissible interpretive narratives of what Shelton actually said. Bussey also contends that his counsel unreasonably failed to cross-examine the two officers who took the statements about when they wrote their police reports. This, he says, was important because the officers wrote their reports months after the incident and claimed to rely on their reports to remember what Shelton said months earlier. He claims that the contents of the § 3507 statements prejudiced his case at trial because, in the statements, Shelton claimed Bussey threatened her with a gun, but, in her trial testimony, Shelton said he did not have a gun. Whether Bussey had a gun during the altercation was an essential element of Bussey's aggravated menacing, PFDCF, and endangering-the-welfare-of-a-child charges.

(7) "We review a Superior Court judge's denial of a Rule 61 motion for postconviction relief for abuse of discretion."[4] We review questions of law *de novo*.[5]

(8) The State now contends that Bussey's claim is procedurally barred under Superior Court Criminal Rule 61(i)(4), which provides that "[a]ny ground for relief that was formerly adjudicated, whether in the proceeding leading to the judgment of conviction, in an appeal, in a postconviction proceeding, or in a federal

---

[4] *Neal v. State*, 80 A.3d 935, 941 (Del. 2013).
[5] *Id.*

4

habeas corpus proceeding, is thereafter barred."[6] The State argues that Bussey's claims are barred because Bussey, by focusing on the accuracy of the § 3507 statements and the victims' credibility, is essentially making a sufficiency-of-the-evidence claim, which was raised and rejected by this Court on direct appeal.[7] Because the State did not present this argument to the trial court—to the contrary, the Superior Court observed that "the Defendant and the State are in accord that no procedural issues bar review of the substance of Defendant's claims"—it is waived.[8]

(9) To prove a claim for ineffective assistance of counsel, a movant must satisfy the two-pronged test established in *Strickland v. Washington*.[9] The movant must first show that his attorney's conduct fell below an "objective standard of reasonableness" that is based on "prevailing professional norms."[10] Once ineffectiveness is established, the movant must show that the attorney's deficient performance prejudiced his case.[11] This means that there must be a reasonable

---

[6] Del. Super. Ct. Crim. R. 6l(i)(4).

[7] Answering Br. at 13.

[8] Supr. Ct. R. 8. In any event, we do not accept the State's characterization of Bussey's claim as a sufficiency-of-the-evidence challenge. Instead, we understand Bussey's position to be that his attorney provided ineffective assistance by not objecting to the admission of two § 3507 statements and by not properly cross-examining the officers who presented the statements. He is not claiming that the evidence presented to the jury was insufficient to convict him—rather, he is claiming that a portion of that evidence was inadmissible and that his counsel failed to elicit further evidence which, had it been elicited, would have cast doubt on the evidence used to convict him. That is not a sufficiency-of-the-evidence claim. Therefore, even in the absence of waiver, Bussey's claims are not barred by Rule 6l(i)(4).

[9] 466 U.S. 668 (1984).

[10] *Id.*

[11] *Strickland,* 466 U.S. at 694.

probability that but for the attorney's deficient performance, the result of the proceeding would have been different.[12] A reasonable probability requires more than a showing "merely that the conduct 'could have or might have or it is possible that [it would have]' led to a different result."[13] "A reasonable probability is a probability sufficient to undermine confidence in the outcome."[14]

(10) Bussey has raised some legitimate concerns regarding the manner in which the State proved the substance of the statements Shelton made on the night Bussey assaulted her.[15] And it is at least colorable that, had Bussey's counsel objected to the admission of the statements at trial, the trial court might have ruled that the statements were inadmissible. But we need not consider whether Bussey's counsel's failure to object was objectively reasonable under the circumstances because, even if we were to conclude that Bussey's counsel should have objected to

---

[12] *Id.*

[13] *Redden v. State*, 150 A.3d 768, 774 (Del. 2016) (citing *Neal v. State*, 80 A.3d 935, 942 (Del. 2013)).

[14] *Strickland*, 466 U.S. at 684.

[15] The unrecorded § 3507 statements were admitted through two officers, one of whom took notes but destroyed them and one whom did not take notes. The officers recorded the statements in their respective police reports but did not write their reports until months after the incident. And there is reason to believe that the officers did not remember precisely what Shelton had said. The officers needed to refer to their reports to remember the statements, and, even after doing so, could only say what they believed she said.

the officers' testimony, his failure to do so did not cause any prejudice to Bussey.[16]

Although Bussey's trial strategy was designed to show that he did not have a gun during his altercation with Shelton, Bussey never disputed that Shelton told police that night that he had a gun. In fact, Shelton admitted on direct examination *before the § 3507 statements were admitted* that she told the police on the night of the attack that Bussey was threatening her with a gun.[17] Thus, as noted in Bussey's trial counsel's affidavit, "[w]hile Ms. Shelton testified that the statements she gave included false allegations regarding [Bussey's] actions, in particular the possession of a firearm, the fact that a false statement was made to police and the context of the same were never in dispute."[18]

(11) Moreover, even if Bussey's trial counsel had successfully challenged the § 3507 statements, there was still enough evidence for the jury to conclude that he had a gun when he threatened Shelton. Shelton's neighbor, Tyreshia Taylor, testified that she saw Bussey holding an object that she believed was a gun. Shelton's son's § 3507 statement, which is not challenged, also stated that Bussey

---

[16] *Monroe v. State*, 2015 WL 1407856, at *3 (Del. March 25, 2015) (TABLE) ("Because an appellant must prove both *Strickland* prongs, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. Instead, if it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed.") (quoting *Strickland*, 466 U.S. at 697) (internal quotation marks omitted)

[17] Shelton also admitted at trial that, when she told her son to call the police, she asked him to "tell them that his dad had a gun." App. to Opening Br. at A206.

[18] *Id.* at A583–84.

threatened him and his mother with a gun. The transcripts of the prison phone conversations, in which Bussey and Shelton discussed Shelton changing her original story, also provided evidence that Bussey had a gun; during one call, when Bussey accused Shelton of telling the police where he put the gun, Shelton said she did not know where he put it.

(12) In short, it is not reasonably probable that, but for the admission of Shelton's § 3507 statements, the result of Bussey's trial would have been different. Because Bussey has not satisfied *Strickland's* prejudice prong, the Superior Court did not abuse its discretion when it denied Bussey's motion for post-conviction relief under Rule 61.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:

/s/ *Gary F. Traynor*
Justice