**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

STATE OF DELAWARE,       )
                             )
     v.                    )
                             )     I.D. 1608013519
MICHAEL JACKSON,       )
                             )
     Defendant.         )

Date Decided: May 8, 2020

*Upon Defendant Michael Jackson's Motion for Postconviction Relief*
**Denied.**

## ORDER

On August 31, 2016, Michael Jackson ("Defendant") was arrested. On November 21, 2016, a New Castle County Grand Jury returned an indictment on charges of Possession of a Firearm by a Person Prohibited, Possession of Ammunition by a Person Prohibited, Possession of a Firearm during the Commission of a Felony, Disregarding a Police Officer's Signal, Driving During Suspension, and Disregarding a Red Light. On June 20, 2017, Defendant waived his right to a jury trial; thereafter, Defendant's case proceeded to a bench trial. Defendant was convicted of Possession of a Firearm by a Person Prohibited, Possession of Ammunition by a Person Prohibited, Possession of a Firearm during the Commission of a Felony, Disregarding a Police Officer's Signal, and Disregarding a Red Light. After granting the State's motion to declare Defendant a habitual offender under 11

1

*Del. C.* § 4214, the Court sentenced Defendant to a total of 43 years of Level V incarceration suspended after 40 years for probation.

After Defendant's appeal, the Delaware Supreme Court affirmed Defendant's conviction and sentence.[1] This *pro se* Motion for Postconviction Relief was filed on May 16, 2019. On September 10, 2019, Defendant's Trial Counsel filed an affidavit. On October 29, 2019, the State filed its response. On December 9, 2019, Defendant filed his Reply Brief. After reviewing Defendant's motion, Trial Counsel's affidavit, the State's response, and Defendant's reply, the Court finds that Defendant's motion for postconviction relief must be DENIED.

## Defendant's Assertions

In his motion, Defendant raises two grounds for postconviction relief: 1) Trial Counsel did not provide Defendant with effective assistance of counsel; and 2) Defendant's due process rights were violated. Defendant contends that Trial Counsel was ineffective because he failed to provide relevant case law in Defendant's suppression motion and he refused to use additional grounds to clarify police errors. Defendant argues that his due process rights were violated when the State destroyed the DNA evidence by consuming the entire sample because no defense expert could test the DNA evidence and Defendant was not given the benefit of an inference that the destroyed evidence would have been exculpatory in nature.

---

[1] *Jackson v. State*, 2019 WL 994535 (Del. Feb. 28, 2019).

2

## Discussion

The Court must assess potential procedural bars to relief under Rule 61(i) before evaluating the merits of Defendant's motion.[2] The State has conceded, and this Court agrees, that Defendant's motion is not time barred. The State argues that Defendant's claims are procedurally barred under Rule 61(i)(4) as previously litigated.[3] The Court finds that Defendant's claims are not procedurally barred under Rule 61(i)(4) because neither claim was previously litigated.

Although Defendant's claim of ineffective assistance of counsel was not raised in the prior proceedings, this claim is not procedurally barred under Rule 61(i)(3) because a motion for postconviction relief is the proper mechanism for raising an ineffective assistance of counsel claim.[4] Defendant's due process claim, however, is procedurally barred under Rule 61(i)(3). Rule 61(i)(3) bars grounds for relief which were not asserted in the proceedings leading to the judgment of conviction unless the defendant can show that there is cause for relief from the procedural default and that the defendant will suffer prejudice from a violation of

---

[2] *Younger v. State*, 580 A.2d 552, 554 (Del. 1990).
[3] State's Resp. Def.'s Mot. Postconviction Relief 7–8 (arguing that Defendant's due process and ineffective assistance of counsel claims were barred as previously litigated).
[4] *Duross v. State*, 494 A.2d 1265, 1268 (Del. 1985). Defendant tried to raise this issue on direct appeal, but the Supreme Court declined to consider the claim. *Jackson*, 2019 WL 994535, at *3.

3

his rights.[5] Defendant did not raise the due process argument in his direct appeal; instead, Defendant raises the due process issue for the first time in this Motion for Postconviction Relief. Defendant has not shown that there is cause for relief from the procedural default or that he will suffer prejudice. Because Defendant did not raise the due process argument in the proceedings leading to the judgment of conviction, he is procedurally barred from raising the issue now.[6]

## A.    Ineffective Assistance of Counsel

Delaware has adopted the two-prong test proffered in *Strickland v. Washington*[7] to evaluate ineffective assistance of counsel claims.[8] To succeed on an ineffective assistance of counsel claim, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness" and that "there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different."[9] To avoid the "distorting effects of hindsight," counsel's actions are afforded a strong presumption of reasonableness.[10] The "benchmark for judging any claim of ineffectiveness [is to] be whether

---

[5] Super. Ct. Crim. R. 61(i)(3).
[6] Super. Ct. Crim. R. 61(i)(3); *see Panuski v. State*, 41 A.3d 416, 420 (Del. 2012) (finding the defendant's due process claims barred by Rule 61(i)(3)); *State v. Whitfield*, 2013 WL 3356127, at *2 (Del. Super. June 20, 2012) (same).
[7] *Strickland v. Washington*, 466 U.S. 668 (1984).
[8] *Albury v. State*, 551 A.2d 53, 58 (Del. 1988).
[9] *Flamer v. State*, 585 A.2d 736, 753 (Del. 1990).
[10] *Neal v. State*, 80 A.3d 935, 942 (Del. 2013) (citing *Strickland*, 466 U.S. at 689).

counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."[11] The Court's objective in evaluating counsel's conduct is to "reconstruct the circumstances of counsel's challenged conduct, and to *evaluate the conduct from counsel's perspective at the time.*"[12]

> 1. *Trial Counsel's alleged failure to cite relevant case law in Defendant's motion to suppress.*

Defendant alleges that Trial Counsel provided ineffective assistance by failing to cite relevant case law in Defendant's motion to suppress. On March 8, 2017, Defendant moved to suppress all evidence obtained pursuant to an "illegal" search and seizure of a green Mercury Marquis. This Court held a hearing on Defendant's suppression motion; subsequently, the Court denied Defendant's motion to suppress, finding that Defendant did not have a reasonable expectation of privacy in the vehicle because it was abandoned.[13]

There was no relevant case law that would have supported Defendant's motion to suppress. In the search and seizure context, "abandonment" focuses on "whether the defendant has forfeited or relinquished his expectation of privacy in

---

[11] *State v. Wright*, 2015 WL 648818, at *3 (Del. Super. Feb. 12, 2015) (internal quotation marks omitted).
[12] *Neal*, 80 A.3d at 942 (citing *Strickland*, 466 U.S. at 689).
[13] Transcript of Suppression Hearing at 48–49, *State v. Jackson*, No. 1608013519 (Del. Super. Mar. 24, 2017).

the dwelling, vehicle or item to be searched."[14] In the instant case, the police officer pursued a green Mercury Marquis for failing to stop at a red light but lost the vehicle for about 15 seconds; when the officer next saw the vehicle it was unoccupied, running, and sitting in a lane of travel with the passenger door open, the doors unlocked, and the keys in the ignition.[15] Courts have previously found a vehicle was abandoned when the suspect fled from the police and left the vehicle in a public place, or left the vehicle unlocked with the keys in the ignition.[16] These previous cases are analogous to Defendant's case. Here, the suspect fled from the police, left the vehicle in a public place, and left the vehicle unlocked with the keys in the ignition. Because the facts of the instant case parallel other instances were courts have found vehicles to be abandoned, the Court found that it was "not even a close call under the case law" when it denied Defendant's motion to suppress.[17]

---

[14] *State v. Brooks*, 2002 WL 31814820, at *5 (Del. Super. Nov. 15, 2002). To determine whether a vehicle is "abandoned," the Court must determine whether the individual had a "reasonable expectation of privacy" in the vehicle at the time it was searched. *Id.*

[15] Transcript of Suppression Hearing at 19–21, *State v. Jackson*, No. 1608013519 (Del. Super. Mar. 24, 2017).

[16] *Brooks*, 2002 WL 31814820, at *5.

[17] Transcript of Suppression Hearing at 48, *State v. Jackson*, No. 1608013519 (Del. Super. Mar. 24, 2017); *see also id.* at 49 ("[T]his is not even a close call. It is so far from a close call . . . I don't even find standing, but even if I did, there's ample, ample justification for the search given all the factual circumstances, the totality of the circumstances and the standards applicable here.").

6

Furthermore, the police were also justified in seizing the automobile without a warrant under the public safety doctrine.[18] The "public safety doctrine" is an acknowledgement that the "modern police officer is a 'jack-of-all-emergencies,' with 'complex and multiple tasks to perform in addition to identifying and apprehending persons committing serious criminal offenses.'"[19] In emergency situations, the police can investigate and render assistance even without reasonable suspicion of criminal activity.[20] In the instant case, it is clear that the public safety exception also justifies the seizure of the abandoned vehicle from a highly trafficked area.[21] A number of dangerous conditions justified the officer's seizure of the vehicle. First, the abandoned vehicle sitting in the lane of travel was a potential hazard to other drivers and nearby pedestrians. Second, the loaded firearm sitting in the unlocked, abandoned vehicle posed a threat to nearby pedestrians, drivers, and other police officers.[22] Even if Defendant somehow had a reasonable expectation of

---

[18] *Williams v. State*, 962 A.2d 210, 216 (Del. 2008).

[19] *Id.* at 216–17.

[20] *Id.* at 217.

[21] Transcript of Suppression Hearing at 19–23, *State v. Jackson*, No. 1608013519 (Del. Super. Mar. 24, 2017).

[22] Non-Jury/Bench Trial Transcript at 53:13–20, 113–14, *State v. Jackson*, No. 1608013519 (Del. Super. June 20, 2017); *see Cady v. Dombroski*, 413 U.S. 433, 447–48 (1973) (finding the search of a trunk for weapons without a warrant was not unreasonable because the trunk could have been accessed by nearby "vandals" during that time).

privacy in the abandoned vehicle, the police were justified in seizing the vehicle under the public safety doctrine.

Defendant does not identify the "relevant case law" which Trial Counsel should have cited in the motion to suppress. The facts of Defendant's case show that the vehicle was abandoned. In the alternative, the facts also demonstrate that the police properly searched the contents of the vehicle under the public safety doctrine. Trial Counsel did not act unreasonably when it failed to cite "relevant case law" in the motion to suppress; accordingly, Trial Counsel was not ineffective.

2. *Trial Counsel's alleged failure to use additional grounds to clarify the violations of Defendant's Constitutional rights.*

Defendant argues that Trial Counsel failed to raise additional grounds to clarify the violations of Defendant's Constitutional rights and that Trial Counsel was aware of these additional grounds. Defendant points to comments Trial Counsel made in an office conference with the Court and the State where Trial Counsel mentioned potential issues with the police contaminating the crime scene. Assuming *arguendo* that Trial Counsel's failure to raise these issues in a pre-trial motion was unreasonable, Defendant has not shown that the result of the proceeding would have been different.

DNA evidence was not necessary to find Defendant guilty of the charges of Possession of a Firearm by a Person Prohibited ("PFBPP") and Possession of Ammunition by a Person Prohibited ("PABPP"). For the charge of PFBPP,

8

constructive possession is sufficient.[23] To show that an individual had constructive possession over a firearm, the State must show that the individual: i) knew the location of the gun; ii) had the ability to exercise dominion and control over the gun; and iii) intended to exercise dominion and control over the gun.[24] As long as the State shows an individual had constructive possession, then the individual can be convicted of PFBPP without evidence that the individual ever touched the firearm.[25]

Prior to trial, the Court excluded all DNA evidence recovered from the crime scene; accordingly, the Court did not use the DNA evidence when it found Defendant guilty of PFBPP and PABPP. Instead, the Court found that Defendant "possessed" the firearm from the other evidence presented at trial. Because the Court did not use the DNA evidence at all when it rendered its decision, the "additional grounds" that Defendant claims Trial Counsel should have raised would not have changed the result of the proceeding. Accordingly, Trial Counsel was not ineffective for failing to raise these additional grounds.

---

[23] *Bessicks v. State*, 2017 WL 1383760, at *2 (Del. Apr. 13, 2017).
[24] *Id.*; *see also Lecates v. State*, 987 A.2d 413, 426 (Del. 2009) (adopting the *White v. State* constructive possession test for cases involving PFBPP charges).
[25] *See Bessicks*, 2017 WL 1383760, at *2 (finding the defendant had constructive possession of the firearm even though the gun was kept in a bedroom closet in the defendant's home); *Lecates*, 987 A.2d at 426 (finding the defendant had constructive possession of the firearm even through the gun was underneath the front seat armrest of the vehicle that the defendant was driving).

## Conclusion

For the forgoing reasons, Defendant's Motion for Postconviction Relief is

**DENIED.**

**IT IS SO ORDERED.**

_____
**The Honorable Calvin L. Scott, Jr.**