**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| STATE OF DELAWARE, | ) | |
| | ) | |
| V. | ) | **ID. No. 1701006494** |
| | ) | |
| GUY JONES, | ) | |
| Defendant. | ) | |

**ORDER**

Submitted: August 4, 2023
Decided: November 30, 2023

Upon consideration of Defendant Guy Jones's Motion for Postconviction Relief, the State's response thereto, the affidavit of trial counsel, and the record in this case, it appears to the Court that:

## I.    FACTUAL AND PROCEDURAL BACKGROUND

On January 10, 2017, police responded to the scene of a shooting at an apartment in Dover, Delaware.[1]  Officers found Javan Cale lying on the floor of the apartment suffering from several gunshot wounds.[2]  Mr. Cale possessed a silver 9mm Smith and Wesson semiautomatic handgun.[3]  Multiple shell casings – of two different types – were located at the scene, indicating an exchange of gunfire.

---

[1] Def.'s Mot. for Postconviction Relief at 3.

[2] Id.

[3] Id.

1

Witnesses saw two men leave the apartment after the shootout.[4] Mr. Cale was pronounced dead at the hospital.[5]

The next morning, the Dover Police Department ("DPD") discovered that, on the previous night, a man, later identified as DePaul Wilson, arrived at Christiana Care Hospital's Middletown facility suffering from multiple gunshot wounds to his lower extremities.[6] Mr. Wilson was transported to Christiana Hospital in Newark, Delaware.[7] Mr. Wilson signed himself out of the hospital before DPD officers arrived.[8] The DPD determined that Defendant Guy Jones delivered Mr. Wilson to the hospital.[9]

Police later interviewed Mr. Wilson and Mr. Jones regarding their whereabouts on the night of Mr. Cale's shooting.[10] Initially, both men claimed to have travelled to Middletown with a third man, Andre Brown, to purchase

---

[4] Id.

[5] Id.

[6] Id. at 4.

[7] Id.

[8] Id. at 5.

[9] Id.

[10] Id. at 5-6.

marijuana.[11]  Mr. Jones and Mr. Wilson later changed their story to claim that they, along with Mr. Brown and another individual named Oscar Livingston, drove to Mr. Cale's apartment in Dover to purchase marijuana.[12]  Both men denied any intent to rob Mr. Cale.[13]  Both men denied shooting Mr. Cale.[14]

Mr. Jones provided a later statement acknowledging that he, Mr. Wilson, and Mr. Brown were present when the shooting occurred.[15]  Mr. Jones also stated that Mr. Wilson was shot and injured on the evening of January 10, 2017.[16]  Mr. Jones, along with Mr. Wilson, denied the initiation of any gunfire.[17]

Mr. Jones and Mr. Wilson were arrested on February 14, 2017.[18]  They were tried jointly on charges of Murder 1st Degree, Murder 2nd Degree, Attempted Robbery 1st Degree, two counts of Possession of a Firearm During the Commission

---

[11] Id.

[12] Id. at 6.

[13] Id.

[14] Id.

[15] Id.

[16] Id.

[17] Id.

[18] Id. at 2.

3

of a Felony, and Conspiracy 2nd degree.[19]  Both were found guilty on all counts following a trial on April 26, 2018.[20]  On August 24, 2018, Mr. Jones was sentenced to life in prison.[21]

Mr. Jones filed a timely appeal to the Delaware Supreme Court.[22]  He argued that the trial court erred in not severing his trial from that of Mr. Wilson.[23]  Mr. Jones also asserted that the trial court erred in allowing the State to present two allegedly improper statements made by detectives concerning Mr. Jones's criminal history.[24]

The Delaware Supreme Court affirmed Mr. Jones's convictions on July 16, 2019.[25]  In its affirmance, the Court noted that there appeared to be a strategic reason trial counsel opted against severing the trial.[26]  As to the statements Mr. Jones found improper, the Court classified them as "fleeting in the context of a long interview."[27]

---

[19] Id.

[20] Id.

[21] Id.

[22] Jones v. State, 213 A.3d 1186, 2019 WL 320694, at *1 (Del. 2019) (TABLE) (Mr. Jones raised several other arguments on appeal.  This Court notes only those arguments most relevant to his current Motion for Postconviction Relief).

[23] Id.

[24] Id.

[25] Id.

[26] Id.

[27] Id.

## II.    MR. JONES'S MOTION FOR POSTCONVICTION RELIEF

On July 14, 2020, Mr. Jones, through counsel, filed a Motion for Postconviction Relief raising four claims of ineffective assistance of counsel against his trial counsel.  Specifically, Mr. Jones alleged that his trial counsel was ineffective as (1) she failed to call Andre Brown and Ronnell Paige as defense witnesses; (2) she failed to move to sever Mr. Jones's trial from Mr. Wilson's trial; (3) she failed to redact two statements made by detectives during an interview with Mr. Jones; and (4) she failed to object to the jury instructions.[28]  Trial counsel filed an affidavit explaining the rationale for her various trial decisions.[29]  In trial counsel's affidavit, she articulated the strategic choices she made and presented her justification for those decisions.[30]

By way of letter, the State responded to Mr. Jones's motion.  The State largely advanced the same contentions as trial counsel.[31]  Mr. Jones filed a reply to the

---

[28] Def.'s Mot. for Postconviction Relief at 14, 22, 30, 38.

[29] See Trial Counsel Aff.

[30] Id.

[31] See State's Response to Def.'s Mot. for Postconviction Relief.

5

State's letter.[32] Mr. Jones's reply restated his initial ineffective assistance of counsel claims.[33]

A Commissioner of this Court issued her Report and Recommendations on August 15, 2022 (the "Report").[34] The Report recommended that all four of Mr. Jones's ineffective assistance of counsel claims be denied as procedurally barred by Superior Court Criminal Rule 61(i)(3).[35] The Report found that trial counsel competently represented Mr. Jones.[36] Where Mr. Jones and trial counsel recalled events differently, the Report found trial counsel's recollections more credible.[37]

Mr. Jones filed his objections to the Report on August 31, 2022.[38] Mr. Jones objected to the Report's rejection of all of his ineffective assistance of counsel claims.[39] Mr. Jones based his objections largely on the alleged failure of the Report to consider the potential positive outcomes available to him had trial counsel

---

[32] See Def.'s Reply to State's Response to Def.'s Mot. for Postconviction Relief.

[33] Id.

[34] State v. Jones, Del. Super., ID No. 1701006494, Freud, A (Aug. 15, 2022) (REPORT).

[35] Id. at 22.

[36] Id.

[37] Id.

[38] Def.'s Obj. to Commissioner's R. & R.

[39] Id.

6

represented Mr. Jones competently.[40]  This Court held oral argument on Mr. Jones's objections to the Report on August 1, 2023.

## III.  RULE 61'S PROCEDURAL REQUIREMENTS

Delaware courts must consider Criminal Rule 61's procedural requirements before addressing any substantive issues.[41]  These procedural bars are "timeliness, repetitiveness, procedural default, and former adjudication."[42]  Mr. Jones filed his Rule 61 motion within one year of the Supreme Court's final judgment affirming his conviction.[43]  Therefore, his motion is timely.  Further, as this motion is Mr. Jones's first Rule 61 motion, it is not repetitive.

Superior Court Criminal Rule 61(i)(3) further outlines that "[a]ny ground for relief that was not asserted in the proceedings leading to the judgment of conviction, as required by the rules of this court, is thereafter barred, unless the movant shows … [c]ause for relief from the procedural default and … [p]rejudice from violation of the movant's rights."[44]  This Rule 61 procedural bar is inapplicable to allegations of

---

[40] See generally id.

[41] Younger v. State, 580 A.2d 552, 554 (Del. 1990).

[42] State v. Stanford, 2017 WL 2484588, at *2 (Del. Super. June 7, 2017).

[43] Def.'s Mot. for Postconviction Relief at 1; Jones, 2019 WL 320694, at *1.

[44] Super. Ct. Crim. R. 61(i)(3).

ineffective assistance of counsel that could not have been raised on direct appeal.[45] Mr. Jones's ineffective assistance of counsel claims are not procedurally barred. The Court will address these claims on their merits.

## IV. DISCUSSION

A claim of ineffective assistance of counsel is reviewed under the two-part Strickland test.[46] A claimant asserting ineffective assistance of counsel must first demonstrate that his defense counsel's representation fell below an objective standard of reasonableness. Second, a claimant must show a reasonable probability that, but for counsel's errors, the result of his proceedings would be different.[47]

For the first prong, deficient performance, the burden falls on the claimant to show that counsel's conduct fell below an objective standard of reasonableness.[48] In other words, a claimant must establish "that no reasonable lawyer would have conducted the defense as his lawyer did."[49] A strong presumption exists that

---

[45] State v. Coverdale, 2018 WL 259775, at *2 (Del. Super. Jan. 2, 2018) (citing State v. Smith, 2017 WL 2930930, at *1 (Del Super. July 7, 2017)).

[46] Strickland v. Washington, 466 U.S. 668, 688-94 (1984); see also Neal v. State, 80 A.3d 935, 941-42 (Del. Nov. 8, 2013).

[47] Strickland, 466 U.S. at 688-94; see also Alston v. State, 125 A.3d 676, 2015 WL 5297709, at *3 (Del. Sept. 4, 2015).

[48] Green v. State, 238 A.3d 160, 174 (Del. 2020) (citing Burger v. Kemp, 483 U.S. 776, 791 (1987)).

[49] Id.

8

counsel's representation was reasonable.[50] "It is not this Court's function to second-guess reasonable [ ] tactics" engaged by trial counsel.[51] An attorney's strategic or tactical choices made after a thorough investigation of the relevant law and facts are "virtually unchallengeable."[52]

Second, specific allegations of how defense counsel's conduct actually prejudiced the proceedings must be outlined; "mere allegations of ineffectiveness" will not suffice.[53] This second prong requires a claimant to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[54] "A reasonable probability is a probability sufficient to undermine confidence in the outcome."[55]

A claimant must prove **both** deficient attorney performance **and** resulting prejudice to succeed in making an ineffective assistance of counsel claim. Failure in the first instance to prove either will doom his claim.[56] If one prong of an

---

[50] Wright v. State, 671, A.2d 1353, 1356 (Del. 1996).

[51] State v. Drummond, 2002 WL 524283, at *1 (Del. Super. Apr. 1, 2002).

[52] Green, 238 A.3d at 174.

[53] Alston, 2015 WL 5297709, at *3 (citing Wright, 671 A.2d at 1356).

[54] Starling v. State, 130 A.3d 316, 325 (Del. 2015) (quoting Strickland, 466 U.S. at 694).

[55] Strickland, 466 U.S. at 694.

[56] Strickland, 466 U.S. at 697; Ploof v. State, 75 A.3d 811, 825 (Del. 2013) ("Strickland is a two-pronged test, and there is no need to examine whether an attorney performed deficiently if the deficiency did not prejudice the defendant.")

ineffective assistance of counsel claim fails, then the Court need not address the other.[57]

**1. Failure to present testimony of Andre Brown and Ronnell Paige**

In his first claim of ineffective assistance of counsel, Mr. Jones contends that trial counsel was ineffective for failing to call Andre Brown and Ronnell Paige as defense witnesses.[58] Mr. Jones argues that the combined testimony of Mr. Brown and Mr. Paige would have materially aided his defense.[59] This claim fails both prongs of the Strickland test.

Mr. Jones asserts that Andre Brown's testimony would have been favorable to his defense.[60] Specifically, Mr. Jones alleges that Mr. Brown would have testified that Mr. Jones only intended to purchase marijuana from Mr. Cale.[61] According to Mr. Jones, Mr. Brown's testimony would have noted the absence of any discussion of robbing Mr. Cale.[62] Further, Mr. Brown allegedly would have testified that Mr.

---

[57] Id.

[58] Def.'s Mot. for Postconviction Relief at 14.

[59] Id.

[60] Id. at 21.

[61] Id.

[62] Id.

10

Jones did not approach Mr. Cale's door with his weapon drawn, and that Mr. Cale initiated the shooting.[63]

Trial counsel evaluated Mr. Brown's potential testimony and its contribution to Mr. Jones's defense. Trial counsel elected not to call Mr. Brown as a witness, as trial counsel determined that Mr. Brown's testimony would "at minimum, not be beneficial to Defendant's case."[64] Trial counsel was apprehensive about Mr. Brown's recorded statement that both Mr. Jones and Mr. Wilson were in possession of guns.[65] Trial counsel was similarly concerned with Mr. Brown's recorded statement that, by the time Mr. Jones and Mr. Wilson arrived at Mr. Cale's apartment, Mr. Brown knew that they were not there to buy drugs.[66] Based on these concerns, trial counsel strategically decided not to call Mr. Brown to testify.[67]

Deciding whether to call a particular witness constitutes a tactical matter left to trial counsel.[68] Trial counsel's tactical decisions are presumed reasonable and are

---

[63] Id.

[64] Trial Counsel Aff. ¶ 3.

[65] Id.

[66] Id. See also Def.'s App. at 329 (Mr. Brown states he saw Mr. Jones and Mr. Wilson each with a gun); see also id. at 335-36 (Mr. Brown states he did not think they were there to buy drugs).

[67] Trial Counsel Aff. ¶ 1.

[68] Outten v. State, 720 A.2d 547, 557 (Del. 1998).

11

"virtually unchallengeable."[69]  Mr. Jones has failed to demonstrate that trial counsel's tactical decision not to call Mr. Brown falls below the bar of reasonable representation.

As to the decision not to call Ronnell Paige as a defense witness, both the State and Mr. Jones agree that Mr. Paige had no personal knowledge of the shooting.[70]  Mr. Jones takes the position that Mr. Paige's testimony would be admissible to impeach Mr. Brown's testimony.[71]  Mr. Jones argues that, had Mr. Brown testified, Mr. Paige's testimony would have accentuated the positives of Mr. Brown's testimony for the defense, while mitigating any negative testimony.[72]

Setting aside the issue that Mr. Paige's testimony depended on the decision to call Mr. Brown first, trial counsel concluded that Mr. Paige's testimony would not be beneficial.[73]  Trial counsel noted that Mr. Paige had no direct knowledge of the events.[74]  Further, trial counsel believed Mr. Paige's testimony would have highlighted the inconsistencies between the statements given by Mr. Jones and Mr.

---

[69] Green, 238 A.3d at 174.

[70] Def.'s Mot. for Postconviction Relief at 18; see also Def.'s App. at 352-54 (Affidavit of Ronnell Paige detailing Mr. Paige's knowledge of the events in question).

[71] T. of Oral Arg. at 14: 5-12.

[72] Def.'s Mot for Postconviction Relief at 19-20.

[73] Trial Counsel Aff. ¶¶ 2-3.

[74] Id.

Brown.[75]  In short, from trial counsel's estimation, Mr. Paige's testimony had the very real potential of doing more harm than good.

To the extent that Mr. Paige's testimony would have been admissible to impeach Mr. Brown, the defense risked creating a scenario wherein Mr. Brown's testimony likely required mitigation in the form of Mr. Paige's testimony.  This attenuated and risky defense strategy dissuaded trial counsel from its usage and utility.  The decision not to pursue a risky strategy falls under the exact type of tactical decision left to trial counsel.  Trial counsel appears to have considered both the positives and the negatives of pursuing such a strategy.[76]  She simply decided against it.  As such, Mr. Jones has failed to demonstrate that trial counsel's performance fell below an objective standard of reasonableness for not calling Mr. Paige.

Even if Mr. Jones had successfully argued deficient performance, his ineffective assistance of counsel claim would still fail for his inability to show resulting prejudice.  Mr. Brown's statements contained several quotes which were harmful to the defense. Those harmful statements suggest that, even if Mr. Brown had testified, no guarantee existed that the overall effect of Mr. Brown's testimony

---

[75] Id.

[76] Trial Counsel Aff. ¶¶ 1-3.

would have been positive. Calling Mr. Paige to help mitigate any harmful statements by Mr. Brown likely would not have dulled their impact fully. As Mr. Jones cannot establish what prejudice he suffered by the failure to call Mr. Brown and Mr. Paige as witnesses, this portion of his claim fails to satisfy the second prong of the Strickland test.

## 2. Failure to sever Mr. Jones's trial from Mr. Wilson's

Mr. Jones next claims that trial counsel was ineffective for failing to file a motion to sever Mr. Jones's trial from that of Mr. Wilson's.[77] Mr. Jones argues that the redactions of the statements given by himself and Mr. Wilson, which were necessary to facilitate a joint trial, created a "confusing absurdity" for the jury.[78] While conceding that a joint trial is typically appropriate for co-defendants, Mr. Jones argues trial counsel's decision not to sever the trial prevented him from presenting favorable portions of the redacted statements.[79] Mr. Jones also contends that he requested the trials be severed, but trial counsel failed to respect Mr. Jones's request.[80]

---

[77] Def.'s Mot. for Postconviction Relief at 22.

[78] Id. at 27.

[79] Id.

[80] Id.; see also Def.'s App. at 355 (Guy Jones's affidavit).

Trial counsel spent "[a] considerable amount of time" with Mr. Jones reviewing whether to pursue severance.[81] Trial counsel and Mr. Jones discussed a breakdown of the strategic implications of severing versus not severing, as well as "matters personal to the defendant."[82] Trial counsel averred that Mr. Jones advised her he did not wish to sever his case from Mr. Wilson's.[83]

After those discussions, trial counsel decided to pursue a joint defense strategy with counsel for Mr. Wilson. That strategy revolved around Mr. Jones and Mr. Wilson both acknowledging their presence at Mr. Cale's apartment, but denying any involvement with any shooting. Given the available information and Mr. Jones's wishes, trial counsel's tactical decision was reasonable.

As to the personal matters trial counsel discussed with Mr. Jones, Mr. Jones clearly considered Mr. Wilson to be family based on Mr. Jones's statements to police.[84] It can be reasonably inferred that Mr. Jones wished to pursue a joint trial with Mr. Wilson because neither defendant wanted to turn on the other. Trial counsel also may have made the reasonable decision to opt for a joint trial so that

---

[81] Trial Counsel Aff. ¶ 4.

[82] Id.

[83] Id.

[84] See generally Def.'s App. at 225-95 (wherein Mr. Jones makes various references to Mr. Wilson as his brother).

Mr. Jones could benefit from some of Mr. Wilson's statements – statements that would have otherwise been foreclosed to him if the trials were severed. Accordingly, Mr. Jones has failed to establish trial counsel's decision on severance fell below an objective standard of reasonable representation.

Further, a motion to sever may have been unsuccessful. "[A] defendant is not entitled to a separate trial simply because he might stand a better chance of being acquitted."[85] The Delaware Supreme Court addressed Mr. Jones's right to sever the trial, and concluded that his right to a fair trial was not violated by a failure to sever.[86] Mr. Jones offers a conclusory statement that there was "a reasonable probability that the outcome would have been different" if the motion to sever was filed, but offers nothing more to support his proposition. Without more, Mr. Jones cannot satisfy the prejudice prong of Strickland for this particular assertion.

### 3. Failure to redact statements made by detectives during Mr. Jones's interview

Mr. Jones's third ineffective assistance of counsel claim centers around statements made by detectives during Mr. Jones's interview.[87] Mr. Jones contends that the detective's statements improperly attack his credibility and referenced Mr.

---

[85] Bradley v. State, 559 A.2d 1234, 1241 (Del. 1989).

[86] Jones, 2019 WL 320694, at *1.

[87] Def.'s Mot. for Postconviction Relief at 30.

Jones's prior criminal history.[88] Mr. Jones argues that these statements damaged his credibility with the jury.[89] Consequently, he proclaims that trial counsel's failure to object to or mitigate the effect of the statements "was unreasonable and caused prejudice to the outcome of the trial."[90]

Contrary to Mr. Jones's assertions, trial counsel indicates that she did not object to the statements in a strategic effort to rehabilitate Mr. Jones's credibility with the jury.[91] Trial counsel determined it was unlikely Mr. Jones would testify.[92] Trial counsel believed Mr. Jones's credibility was damaged with the jury due to his inconsistent statements to police.[93] Trial counsel hoped that, by not objecting to these statements, the statements would demonstrate Mr. Jones's "sincerity and honesty."[94] Trial counsel reasoned that a key element of that rehabilitation was

---

[88] Id. at 31-32 ("For us being here, obviously you know this game and you know it well. You know it pretty well."); id. at 31 ("And the one thing we do appreciate is honesty… You've told some stuff that we haven't heard yet before… Some stuff that's pretty sincere and things that I believe…"); id. ("But having, you know, been at this game for a little bit and doing my job pretty well… I mean there is just some things that you're just flat out not telling us."); id. ("I hope you come clean here soon.").

[89] Id. at 37.

[90] Id.

[91] Trial Counsel Aff. ¶¶ 5.

[92] Id.

[93] Id.

[94] Id.

showcasing the demeanor of both Mr. Jones and the detectives interviewing him.[95] Trial counsel assessed these factors when deciding which statements to redact.[96] She concluded, as a tactical decision, that the inclusion of the detective's statements benefited – rather than harmed – the defense's strategy.[97]

Trial counsel tactically decided not to redact these statements. Mr. Jones now disputes the efficacy of this strategy, but cannot demonstrate that trial counsel's tactics fell below an objective standard of reasonableness. While opting not to redact potentially prejudicial statements constitutes a more perilous approach to trial strategy, trial counsel articulated a reasonable strategic reason for doing so. Her decision does not fall outside of the scope of tactically reasonable. As such, this claim fails to satisfy the first prong of Strickland.

As to the second prong of Strickland, Mr. Jones appealed the inclusion of these statements to the Delaware Supreme Court.[98] In affirming his conviction, the Supreme Court classified these statements as "fleeting in the context of a long interview."[99] Mr. Jones's assertions that the inclusion of these statements tainted the

---

[95] Id.

[96] Id.

[97] Id.

[98] Jones, 2019 WL 320694, at *1.

[99] Id.

jury's opinion of him and resulted in unfair prejudice is not persuasive. With only conclusory support, the second prong of <u>Strickland</u> cannot be satisfied as to this part of Mr. Jones's claim.

### 4. Failure to seek jury instructions that did not refer to the defendants collectively

Mr. Jones's final ineffective assistance of counsel claim asserts that trial counsel was ineffective for failing to object to jury instructions that referred to Mr. Jones and Mr. Wilson collectively as "the defendants."[100] Mr. Jones argues that numerous references to "the defendants" throughout the jury instructions "misled the jury to believe they were a joint entity and deprived Jones of his right to an individualized determination of his culpability."[101] Mr. Jones points to a standard jury instruction given when there are multiple defendants as evidence that trial counsel was ineffective for not seeking a similar instruction.[102]

Trial counsel determined the instructions "clearly directed the jurors to decide their verdict" for each defendant individually.[103] She also noted that the jury

---

[100] Def.'s Mot. for Postconviction Relief at 38.

[101] <u>Id</u>.

[102] <u>Id</u>.

[103] Trial Counsel Aff. ¶ 6.

instructions were argued on appeal.[104]  The Delaware Supreme Court declined to agree with Mr. Jones's argument, holding that there was no plain error in referring to the defendants as a collective.[105]  In its holding, the Court also found that the jury instructions properly instructed the jury to consider each count for each individual defendant separately.[106]

"A defendant has no right to have the jury instructed in a particular form."[107] A defendant, however, is entitled to "have the jury instructed with a correct statement of the substantive law."[108]  Here, the jury was instructed to consider each defendant individually.  This instruction correctly outlines the law, and the jury instructions given survived review by the Delaware Supreme Court.  Trial counsel's decision not to object to jury instructions which provided a correct statement of law falls within the range of reasonable representation.  Thus, this claim fails to satisfy the first prong of <u>Strickland</u>.  This claim also fails the prejudice prong, as Mr. Jones cannot demonstrate how the proposed model instructions would have led to a different

---

[104] <u>Id</u>.

[105] <u>Jones</u>, 2019 WL 320694, at *2.

[106] <u>Id</u>.

[107] <u>Claudio v. State</u>, 585 A.2d 1278, 1282 (Del. 1991).

[108] <u>Id</u>.

result, or how failing to ask for the model instructions created "[a] reasonable probability [ ] sufficient to undermine confidence in the outcome."[109]

## V. CONCLUSION

Having carefully reviewed the record, the Court concludes that Mr. Jones's ineffective assistance of counsel claims fail to satisfy the requisite Strickland standard. The Strickland standard requires Mr. Jones to demonstrate both that his attorney's representation fell below an objective standard of reasonableness, and, that, but for trial counsel's alleged errors, the outcome of the case would have been different. Mr. Jones has failed to satisfy this heavy burden. The Court concludes that Mr. Jones's ineffective assistance of counsel claims are without merit – and no other substantial grounds for relief exist. As such, Mr. Jones's Motion for Postconviction Relief is **DENIED**.

**IT IS SO ORDERED.**

_____
Reneta L. Green-Streett, Judge

RLG/ds
oc:   Prothonotary
cc:   The Honorable Andrea M. Freud
      Trial Counsel
      Michael Modica, Esquire

---

[109] See Strickland, 466 U.S. at 694.